**STATE of Missouri, Plaintiff/Respondent,**

v.

**Gregory L. MAYNARD, Defendant/Appellant.**

**No. 57291.**

Missouri Court of Appeals, Eastern District, Division One.

Nov. 20, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 3, 1991.

**774**

Daniel P. Reardon, Jr., St. Louis, for defendant/appellant.

William L. Webster, Atty. Gen., Timothy W. Anderson, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

GRIMM, Judge.

In this court tried case, defendant Gregory L. Maynard appeals his conviction for possession of cocaine in violation of § 195.020, RSMo 1986. He alleges the "trial court erred in admitting evidence derived from the unconstitutional stop" of defendant at Lambert St. Louis Airport. He contends the agents "lacked a 'reasonable and articulable suspicion' that the [defendant] was involved in criminal activity, thus violating the fourth amendment." Under Rule 29.12(b) standards, we disagree and affirm.

*I. Facts*

On May 8, 1988, defendant purchased a St. Louis–Dallas round trip ticket from a Lambert Airport American Airlines ticket agent. Defendant paid for the over $600 ticket with one hundred dollar bills. He gave the ticket agent his correct name, "Greg Maynard;" identified himself with

an Illinois driver's license in the name of Greg Maynard; and gave the agent a contact telephone number.

The ticket was for a flight scheduled to depart that afternoon. After arriving in Dallas, defendant would have two and one-half hours before his flight back to St. Louis. He would arrive back at 9:30 p.m.

Defendant was 27 years old and dressed in shorts, T-shirt and tennis shoes. He did not check any baggage or have any carry-on luggage.

After defendant left the ticket counter, the American Airlines ticket agent contacted Special Agent Lloyd Patterson of the Drug Enforcement Agency. Agent Patterson has been a DEA agent for 18½ years. The ticket agent said "they had had what was kind of an unusual ticket purchase." Agent Patterson was given the details of defendant's ticket purchase, a description of defendant and his clothing, the information defendant had an Illinois driver's license, and the contact telephone number.

Agent Patterson attempted to verify the contact telephone number. He determined the number was not a working number.

Agent Patterson contacted St. Louis Airport Police Officer Larry Coulson, a police officer for 11 years with three years in drug enforcement, and Detective David Mizell. They waited to meet defendant upon his return to St. Louis. According to Agent Patterson, they wanted to talk to defendant "to see what the reason was for such a short turn-around time" on his flight.

When defendant's flight arrived, two of the officers followed a man who fit the description given by the ticket agent. Officer Coulson, however, remained at the gate and saw another man who fit the description exit the airplane with the plane's crew members.

Officer Coulson followed this man, who was the defendant, as he walked through the airport. Defendant did not stop at the baggage claim area. He was, however, holding a blue shopping bag which he had carried off the plane.

Officer Coulson and Detective Mizell approached defendant while defendant was waiting for his ride to pick him up. Officer Coulson identified himself as a police officer and asked to see defendant's plane ticket. Defendant said he had left it on the plane.

Although defendant admitted his first name was "Greg," he denied his last name was "Maynard" when asked by Officer Coulson. Defendant also stated he did not have any identification, but Officer Coulson noticed a bulge in his pocket. Officer Coulson asked him what the bulge was. Defendant removed the object, which was an address book. Defendant put the book back in his pocket, but then gave it to Officer Coulson after Officer Coulson asked to see it. The address book contained an Illinois driver's license issued to "Greg Maynard."

The officers observed defendant was getting "pale and his nervousness was increasing. He was physically shaking."

The officers informed defendant they suspected he might be trafficking narcotics, and they "intended to take custody of the plastic bag that he was carrying." Defendant turned around and started to run. Officer Mizell had hold of the bag when defendant jerked it. The bag ripped open and six plastic bags of cocaine fell out.

Defendant was arrested for possession of cocaine. In a pre-trial hearing, the trial court denied defendant's motion to suppress which alleged the evidence was illegally obtained.

## II. Standard of Review

■ At trial, the State presented evidence of the officers' stop of defendant and their subsequent discovery that he possessed cocaine. Defendant did not object to these questions. As a result, defendant did not preserve his objections to the evidence for appellate review.

"[W]hen a motion to suppress evidence is denied and the evidence is subsequently offered at trial, defendant must object at trial to the admission of the evidence." *State v. Fields*, 636 S.W.2d 76, 79 (Mo.App. E.D.1982). "Otherwise, he does not preserve for review the issue of whether the evidence should be suppressed." *Id.* However, we exercise our discretion and review defendant's point to determine whether "manifest injustice or miscarriage of justice has resulted." Rule 29.12(b).

## III. Legality of the Search and Seizure

■ In *U.S. v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), Sokolow was stopped at Honolulu International Airport by Drug Enforcement agents who suspected him of being a drug courier. When he was stopped, the agents knew:

(1) he paid $2,100 for two airplane tickets from a roll of $20 bills; (2) he traveled under a name that did not match the name under which his telephone number was listed; (3) his original destination was Miami, a source city for illicit drugs; (4) he stayed in Miami for only 48 hours, even though a round-trip flight from Honolulu to Miami takes 20 hours; (5) he appeared nervous during his trip; and (6) he checked none of his luggage. *Id.*, 490 U.S. at 3, 109 S.Ct. at 1583, 104 L.Ed.2d at 7–8.

Based upon those facts, the Supreme Court held "that the agents had a reasonable basis to suspect that [Sokolow] was transporting illegal drugs." *Id.*, 490 U.S. at 11, 109 S.Ct. at 1587, 104 L.Ed.2d at 13.

The officer making the stop "must be able to articulate something more than an 'inchoate and unparticularized suspicion or 'hunch.'" *Id.*, 490 U.S. at 7, 109 S.Ct. at 1585, 104 L.Ed.2d at 10 (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968)). The Fourth Amendment requires "some minimum level of objective justification" in order to make the stop. *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247, 255 (1984). Yet, the required "level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." *Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585, 104 L.Ed.2d at 10. And, in "evaluating the validity of a stop such as this, we must consider 'the totality of the circumstances-the whole picture.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417,

101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981).

Applying these principles to the facts before us, we note that when defendant was stopped, the experienced drug enforcement officers knew, among other things: (1) defendant paid for his $600 ticket in cash with $100 bills; (2) the contact telephone number he gave the ticket agent was not a working number; (3) his original destination was Dallas, which Agent Coulson said was a source city for drugs for the St. Louis area; (4) he stayed in Dallas for only 2½ hours, even though a round trip from St. Louis to Dallas takes about 4 hours; and (5) he neither checked baggage or had any carry-on luggage.

As in *Sokolow*, "[a]ny one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel." *Id.*, 490 U.S. at 9, 109 S.Ct. at 1586, 104 L.Ed.2d at 11. However, these factors, when taken together "amount to reasonable suspicion." *Id.*

At oral argument, defendant relied heavily on *U.S. v. White*, 890 F.2d 1413 (8th Cir.1989). In *White*, officers detained White without "having any advance information that suggested 'criminal activity may be afoot' or that pointed to someone matching White's description." *Id.* at 1419 (citations omitted).

*White* is not applicable. Here, the agents had advance information concerning defendant and his description. We also note the *White* opinion, decided seven months after *Sokolow*, does not mention the *Sokolow* majority opinion.

There was no plain error resulting in manifest injustice or miscarriage of justice. Defendant's point is denied.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.