STATE of Missouri,
Plaintiff-Respondent,

v.

Ethel Pearl FIELDS, a/k/a Ethel Fields, a/k/a James Earl Taylor and a/k/a James Roy Williams, Defendant-Appellant.

No. 42103.

Missouri Court of Appeals,
Eastern District,
Division One.

April 27, 1982.

Motion for Rehearing and/or Transfer Denied June 18, 1982.

John T. McCaffrey, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Nancy D. Kelley, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

STEPHAN, Presiding Judge.

Appellant was charged with breaking into a building and stealing three typewriters. A jury convicted him of second-degree burglary and stealing. The court below sentenced him to six years for burglary and two for stealing, with the sentences to run concurrently.

Appellant urges two grounds for setting aside the conviction and remanding for a new trial. First, he argues that the trial court erred in overruling his motion to suppress certain evidence. Second, he maintains that the trial court should have given him a hearing on his motion for appointment of substitute counsel. Finding no merit in either of these points, we affirm the conviction.

The facts relevant to the first point on appeal are as follows:

At about 1:00 a.m. on December 1, 1978, Officer John Logan of the St. Louis Metropolitan Police Department was on routine patrol. He saw an automobile, a Chevrolet, parked near a building at 314 North Jefferson. Upon driving into the lot where the car was parked, he saw a man dressed in a light blue shirt and dark pants. The man, who had been standing near the car, began to climb through a broken window in the building. Officer Logan parked his squad car in front of the parked car that he had seen and got out. The officer started to go after the person crawling through the window, but then noticed the Chevrolet begin to move. He arrested the driver, during the course of which arrest he noticed several typewriters in the car.

Officer Logan then radioed for assistance. Five or six police officers were soon on the scene. To these officers, Officer Logan described the suspect who had crawled through the broken window as a white male with a small build wearing a blue shirt and dark trousers. At trial, Officer Logan could not recall whether he included additional information in his description.

Officer Logan informed the officers at the scene that the suspect whom he had described had gone into the building and would probably try to get out on the other side. He noted that "I couldn't go after him because I was holding the one man in custody at which time [the other] officers went around to the south side of the building." Officer Ronald Schneider and other officers found a window open on the southwest corner of the building. Officer Schneider then began to work under the assumption that the suspect had gone east on Olive because no building in which he might conceal himself was open west of Jefferson at that time of night. Accordingly, he drove east on Olive in his tricar. While driving east on Olive, Officer Schneider saw defendant, who fit the general description given by Officer Logan. There was conflicting testimony about whether the defendant was walking at a fast pace or "galloping."

Officer Schneider approached defendant on his motorcycle and ordered him to halt. Defendant turned suddenly, threw his hands up in the air, and said "You got me." The officer placed defendant under arrest. At the time of his arrest, defendant was wearing a blue short-sleeve shirt of the "pull-over" type and a dark pair of pants. Officer Schneider testified that he scrutinized defendant prior to arresting him and "found that he not only matched the description but he also had glass particles in his hair that I could visually see and he also had a fresh cut on his nose and a fresh cut on his right wrist."

Defendant's blue shirt and black trousers were seized as evidence subsequent to his arrest. A debris sample was taken from his hair. Three typewriters and a black topcoat were seized from the green Chevrolet parked outside the scene of the burglary. When Officer Logan brought the topcoat to police headquarters, according to Officer Logan, defendant "indicated the black overcoat that I brought in and said, 'Could I

take my coat with me?'" Upon request, defendant correctly identified the brand of the coat and said that there were some "Bugle" cigarette papers in the pocket. Officer Logan found that brand of papers in the pocket.

Defendant filed a motion to suppress certain evidence obtained after his arrest, including his blue shirt, his trousers, and his statements identifying as his the overcoat seized at the scene of the crime. This motion to suppress was based on the theory that Officer Schneider had no probable cause to arrest defendant.

After the jury was impaneled and immediately before the first witness was called by the state, the trial court heard testimony on defendant's motion to suppress and overruled it. At the hearing on the motion, Officer Logan recounted the events surrounding his discovery of a burglary in progress at 314 North Jefferson. Officer Logan testified that, after calling for assistance, he did not give the police dispatcher a description of the suspect whom he had seen crawl through the window. Officer Logan had in fact written on his police report, filled out the night after the early morning burglary, that he had given the dispatcher a general description of the suspect. At a preliminary hearing several weeks after defendant's arrest, Officer Logan testified that he had caused a description to be broadcasted. Defense counsel was also able to elicit testimony to the effect that Officer Logan could not tell whether Officer Schneider had been among those officers responding to his request for assistance to whom he had given in person a description of the suspect.

The next witness called at the hearing on the motion to suppress was Officer Schneider, the arresting officer. On direct examination, Officer Schneider testified that in his deposition he had described the blue shirt worn by defendant when arrested as a dress shirt that "buttoned all the way down." Defendant introduced the shirt into evidence; it was in fact a pull-over shirt. Officer Schneider had also testified in his deposition that, when arrested, de-

fendant had a laceration on his right wrist. Officer Logan had also made a note of an injury to defendant's right wrist in the police report. The hospital record covering defendant's treatment after his arrest contains no reference to an injury to the wrist.

On cross-examination by the state, Officer Schneider testified that he arrived at 314 North Jefferson shortly after Officer Logan's call for assistance and that Officer Logan gave him a description of the suspect. Officer Logan then testified that he arrested defendant, who matched the description, after seeing defendant running east on Olive.

The trial court overruled defendant's motion to suppress, and the matter proceeded to trial on the same day. On that day and on the two subsequent days of trial, evidence that defendant had asked to be suppressed in his motion was offered by the state and admitted without objection.

In overruling defendant's motion to suppress, the trial court addressed the following remarks to defense counsel: "[B]asically the burden is on you and your defendant to prove that the Court should sustain the Motion and throw out the case by not allowing this testimony to be entered."

Section 542.296.6, RSMo 1978 provides that, when considering a defendant's motion to suppress evidence,

"The Judge shall receive evidence on any issue of fact necessary to the decision of the motion. The burden of going forward with the evidence and the risk of non-persuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled."

Defendant maintains on appeal that the trial court reached its decision to overrule the motion to suppress by placing the risk of non-persuasion on defendant and then finding the results wanting. According to defendant, evidence of this improper allocation of the burden can be found in the court's own statement, quoted supra, and in the fact that defendant began the presentation of the evidence. Defendant, on the

basis of this allegation of error, asks that we set aside the conviction and remand for a new trial.

The question that we must address initially is whether this point is properly preserved for appellate review. Defendant did not object to this alleged error during the hearing on the motion to suppress. The motion to suppress having been overruled, defendant allowed the evidence that he had sought to suppress to be admitted at trial without objection. In his motion for new trial, he asserted that the trial court erred in overruling his motion to suppress because the court allegedly ruled on the motion without considering the credibility of the police officers who testified.

The rule is well established in Missouri that when a motion to suppress evidence is denied and the evidence is subsequently offered at trial, defendant must object at trial to the admission of the evidence. Otherwise, he does not preserve for review the issue of whether the evidence should be suppressed. *State v. Yowell*, 513 S.W.2d 397, 402–403 (Mo. banc 1974); *State v. Bryson*, 506 S.W.2d 358, 360–361 (Mo.1974); *State v. Simone*, 416 S.W.2d 96, 100 (Mo. 1967); *State v. Powers*, 613 S.W.2d 955, 959 (Mo.App.1981); *State v. Manning*, 612 S.W.2d 823, 827 (Mo.App.1981); *State v. Rayford*, 611 S.W.2d 377, 378 (Mo.App. 1981); *State v. Ethelbert*, 611 S.W.2d 379, 380–381 (Mo.App.1981).

■ The facts presented here raise the question of whether this rule should always be strictly applied. The judge who admitted the evidence at trial was the same judge who had only hours before heard and ruled on the motion to suppress. Defense counsel may have been reluctant to repeat his objections, believing such an exercise to be futile, or even possibly damaging because of its effect on the jury. Nonetheless, we believe that the purpose of the rule outweighs the practical considerations sometimes present. The trial judge should be given an opportunity to reconsider his prior ruling against the backdrop of the evidence actually adduced at trial. See *State v. Yowell*, supra, at 403.

Moreover, although defendant sought the exclusion of the evidence in the pretrial motion and in the motion for a new trial on the grounds that it was seized in connection with an unlawful arrest, at no time was the trial court's attention called to the particular error complained of here, i.e., incorrect allocation of the risk of non-persuasion. We find that the matter is not properly preserved for review.

■ Defendant has not requested that we review his first point under the "plain error rule," Rule 29.12(b), and such review is entirely discretionary with us. *State v. Rayford*, 611 S.W.2d at 378; Rule 29.12(b). We have reviewed the record and find that neither manifest injustice nor miscarriage of justice resulted from the action of the trial judge alleged as error. The state on cross-examination adduced ample evidence of probable cause for defendant's arrest. Defendant's attack on the credibility of the police officers who testified was, while imaginative and resourceful, weak in effect. Defendant was not hindered in eliciting evidence to support his position. Had the trial judge properly allocated the burden of proof, we are confident that the state would have easily met that burden. Accordingly, we uphold the trial court's denial of defendant's motion to suppress evidence.

We turn now to defendant's second point on appeal. Defendant's trial counsel was appointed by the court on January 3, 1979, his previous attorney, the public defender, having been permitted to withdraw because of a conflict of interest. On May 22, 1979, one week before the date then set for trial, defendant filed a motion for appointment of new counsel and for a continuance to allow new counsel to prepare for trial. This motion was overruled without a hearing on May 23, 1979. Trial began on July 2, 1979; the record is silent on the cause of this delay. Defendant contends that the trial court erred in overruling the motion without a hearing. We disagree.

In his motion for appointment of substitute counsel, defendant gave the following grounds for the proposed change:

"3. ... Movant has no faith or confidence in the competence of said counsel.

4. ... Movant believes that said counsel does not believe in the innocence of the accused.

5. ... Movant believes that said counsel has no confidence or conviction in the preparation of his defense in this cause.

6. ... Movant does not believe that said counsel will adequately and competently represent him in this cause."

It is true, as defendant argues, that an accused who is defended by an appointed counsel with whom he has become embroiled in an irreconcilable conflict does not receive effective assistance of counsel and is entitled to substitution of counsel. *U. S. v. Hart*, 557 F.2d 162, 163 (8th Cir. 1977). Discussing this standard, the Western District of this court said in *State v. Smith*, 586 S.W.2d 399, 401 (Mo.App.1979), "An irreconcilable conflict exists where there is a total breakdown of communication between attorney and client...." See also *State v. Armstrong*, 624 S.W.2d 36, 39 (Mo.App. 1981). Yet in the second paragraph of defendant's motion he claimed that he had "had several conferences, as well as several telephone conversations with his said Court-appointed counsel, during which he has discussed with said counsel the details of the evidence anticipated from the State of Missouri, the results of investigations by said counsel, and the evidence available to the accused in his defense." Defendant's own pleading thus suggests that counsel was active in preparing a defense and that there was no breakdown of communication between them.

Paragraph 3 of defendant's motion asserts that he lacked faith in the competence of his counsel; paragraph 6 states defendant's belief that his counsel will not "adequately and competently represent him...." Defendant's subjective view of his counsel's competence is of no moment when measured against the record in this case. The lengthy transcript shows that he was skillfully and diligently represented from beginning to end. Counsel was vigorous in presenting the motion to suppress,

effective in cross-examination of state's witnesses and in the presentation of expert testimony for the defense, and forceful in closing argument. We find no indication of breakdown of communication or irreconcilable conflict between defendant and his counsel. Even if, prior to trial, defendant harbored the fears alleged in paragraphs 3 and 6, his counsel's efforts showed them to be totally unfounded. See *U. S. v. Beaver*, 524 F.2d 963, 965 (5th Cir. 1975).

■ Paragraphs 4 and 5 of the motion complain that counsel did not "believe in the innocence of the accused" and that counsel had "no confidence ... in the preparation of his defense in this cause." An attorney's belief or lack of belief in the innocence of his criminal client is generally irrelevant to the issue of effectiveness of representation. See *McKee v. Harris*, 649 F.2d 927, 932–933 (2d Cir. 1981). As indicated, defendant's representation is shown by the record as having been conducted skillfully and vigorously, with no interference by any personal predisposition of his counsel.

■ The record reveals no inquiry by the trial court, formal or otherwise, into the factual basis of defendant's complaint about his attorney. The trial court, when confronted with an allegation of ineffective assistance, has an obligation to inquire thoroughly into the factual basis of defendant's dissatisfaction. *U. S. v. Hart*, supra, 557 F.2d at 163.

On the other hand, failure to make such an inquiry is not always reversible error. See *U. S. v. Portillo*, 633 F.2d 1313, 1325 (9th Cir. 1980).

Possibly the trial court in the case at bar found that defendant's motion failed to allege proper grounds for dissatisfaction with counsel. Certainly most of defendant's allegations were inadequate in this regard, and the trial court could reasonably have determined that nothing in the proceedings theretofore suggested the need for new counsel.

■ The trial court should have at least made an informal inquiry for the record to

determine whether any incident had occurred to warrant substitution. See *U. S. v. Hart*, supra, 557 F.2d at 163, n. 1 (example of informal inquiry). Defendant received able representation at trial, however. The lengthy record is devoid of any hint of irreconcilable conflict or inadequate representation. This was a well-defended case, particularly in light of the strength of the state's evidence against defendant. The trial judge should have inquired into the matter, but failure to do so was harmless. See *McKee v. Harris*, 649 F.2d at 933; *U. S. v. Young*, 482 F.2d 993, 995–996 (5th Cir. 1973).

The judgment is affirmed.

DOWD and STEWART, JJ., concur.