STATE of Missouri,
Plaintiff/Respondent,

v.

Cedric RICE, Defendant/Appellant.

No. ED 89037.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 1, 2008.

Timothy Joseph Forneris, Office of the Missouri Public Defender, St. Louis, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Judge.

### Introduction

Cedric Rice (Defendant) appeals from his conviction, following a jury trial, of one count of forcible rape in violation of Section 566.030 RSMo 2000,[1] one count of forcible sodomy in violation of Section 566.060, two counts of attempted first-degree robbery in violation of Section 564.011, one count of armed criminal action in violation of Section 571.015, one count of first-degree burglary in violation of Section 569.160, one count of attempted forcible rape in violation of Section 564.011, and one count of stealing over $750 in violation of Section 570.030. The trial court sentenced Defendant as a prior and persistent felony offender to a total of 225 years of imprisonment. We affirm.

### Background

Defendant was charged in connection with attacks on two victims in their apartments located in the Central West End of St. Louis: L.S., a woman in her twenties, and J.D., a woman in her seventies. Regarding the attack on L.S., Defendant was charged with one count of attempted first-degree robbery, one count of first-degree burglary, one count of attempted forcible rape, and one count of stealing over $750. As to J.D.'s attack, Defendant was charged

---

1. All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.

with one count of forcible rape, one count of forcible sodomy, one count of attempted first-degree robbery, and one count of armed criminal action. Both victims testified during Defendant's trial.

Prior to trial, Defendant moved for severance of the offenses charged against him, claiming: 1) substantial prejudice existed because evidence concerning J.D. consisted of DNA while the evidence regarding L.S. was based entirely on circumstantial evidence and speculative and uncertain identification of Defendant by L.S.; and 2) the number of charges and the different aspects of the evidence rendered the facts too complicated for a jury to differentiate and distinguish.

Following argument on Defendant's Motion to Sever Offenses, the trial court concluded that joinder was proper because the nature of the offenses and the State's representations as to what the State expected its evidence to be were sufficient to establish the acts charged were of the same or similar character. The trial court further stated that the nature of the offenses and the State's representations concerning its evidence were sufficient to establish that the evidence about the separate acts charged would be such that a jury would be able to distinguish between the evidence and the legal principles applicable to each case. The trial court concluded Defendant had not established or made a particularized showing of substantial prejudice to him if the offenses were tried together, and the court denied Defendant's motion.

On the day of his trial, October 10, 2006, Defendant requested a continuance of the trial setting. As grounds for his request for continuance, Defendant informed the Court that he wanted to discharge his trial attorney and obtain other counsel. A hearing was conducted on Defendant's request, during which Defendant testified as to his reasons for wanting to discharge his counsel. Defendant testified that, although his counsel had represented him for more than a year, she had visited with him only three times. Defendant believed that his counsel had not properly investigated his claim that his confession was coerced and also had not interviewed his witnesses.

Defendant's trial attorney (Trial Attorney) also testified at the hearing concerning Defendant's request. Trial Attorney told the motion court that she had contacted Defendant's previous attorney regarding the witnesses whose names Defendant had provided her and that Defendant's previous attorney provided her with written notes of interviews conducted with these witnesses. Upon her review of these notes, which she had shared with Defendant and his father, Trial Attorney determined that endorsing these witnesses would not be helpful and, in fact, could be harmful to Defendant's case. Trial Attorney also testified that Defendant's previous attorney had filed a Motion to Suppress Statements regarding Defendant's confession and that Trial Attorney was prepared and ready to argue the motion before trial that morning.

The motion court found that the initial charges against Defendant had been pending since 2002, new additional charges were filed against Defendant in 2004, Trial Attorney had represented Defendant since January 2006, and Defendant had not taken any action to hire a new attorney. The motion court determined Trial Attorney had represented Defendant in a professional manner and was prepared to try the case, instructed Defendant to cooperate with Trial Attorney, and denied Defendant's requests for a continuance and to discharge his attorney.

During the course of voir dire, Defendant submitted to the trial court a written

request to remove Trial Attorney from his case, and to allow Defendant to proceed pro se. During a recorded in-chamber discussion, Defendant stated that he was not immediately prepared to represent himself for the rest of trial. When Defendant indicated that he did not have anything to say that he had not already disclosed to the trial court or to the motion court, the trial court reminded Defendant that the motion court had already denied his requests and told him that the trial would proceed. The trial court further stated as grounds for its denial that Defendant's request was not made in accordance with Section 600.051 [2] and that his request to represent himself was not unequivocal.

According to L.S.'s trial testimony, she left her place of employment around 11:00 p.m. on June 2, 2002, and rode home to her apartment. After L.S. unlocked her front door and deposited her purse and bag on an end table in her living room, she walked into her bedroom. When she entered the room, L.S. saw that the frame and braces holding one of the windows had been broken and that the room was in disarray.

Defendant entered the room behind L.S., pointed something held under his shirt at L.S., and told her to cooperate. Defendant grabbed at L.S.'s hands in an attempt to remove her rings and then he grabbed her buttocks. L.S. pleaded with Defendant to stop touching her, but he forced her on to her bed and told her to be quiet and to cooperate. Defendant kissed, licked and bit L.S., but when he started to undo his jeans, L.S. rolled from the bed. Defendant told L.S. that "if he wasn't going to have that then he was going to get money."

L.S. offered Defendant some rolls of quarters she kept in a desk drawer in her dining room; when he rejected her offer, she suggested they go to her purse in the living room. They both reached for the purse, which resulted in its contents spilling to the floor. Defendant started going through the contents. When Defendant grabbed for her checkbook, L.S. grabbed her cell phone and dialed 911.

L.S. told Defendant she called 911, and he tried to wrestle the phone from her. L.S. warned him that she had a boyfriend who would arrive shortly, that the police

2. Section 600.051.1 permits waiver of counsel when:

Any judge of a court of competent jurisdiction may permit a waiver of counsel to be filed in any criminal case wherein a defendant may receive a jail sentence or confinement if the court first determines that defendant has made a knowledgeable and intelligent waiver of the right to assistance of counsel and the waiver is signed before and witnessed by the judge or clerk of the court, providing further that the waiver contains at least the following information which the defendant has read or which has been read to the defendant before the signing thereof:
(1) That the defendant has been charged with the offense of ......... (nature of charge must be inserted before signing);
(2) That the defendant has a right to a trial on the charge and further that the defendant has a right to a trial by a jury;
(3) That the maximum possible sentence on the charge is ......... imprisonment in jail and a fine in the amount of ......... dollars or by both imprisonment and fine. That the minimum possible sentence is ......... imprisonment in jail or by a fine in the amount of ......... dollars or by both such confinement and fine;
(4) That the defendant is aware that any recommendations by a prosecuting attorney or other prosecuting official are not binding on the judge and that any such recommendations may or may not be accepted by judge;
(5) That if defendant pleads guilty or is found guilty of the charge, the judge is most likely to impose a sentence of confinement;
(6) That, if indigent, and unable to employ an attorney, the defendant has a right to request the judge to appoint counsel to assist the defendant in his defense against the charge.

were coming, and that "if [Defendant] knew what was good for him he needed to be leaving." When L.S. told Defendant to leave by the window through which he had entered her apartment, he did.

While waiting for the police to arrive, L.S. looked to see if anything was missing from her apartment. She noticed that her jewelry boxes had been rifled and that several items of jewelry were missing, including a ruby and diamond necklace and matching earrings (valued at over $750). L.S. identified Defendant as her attacker after viewing him in a line-up on June 4, 2002.

According to J.D.'s trial testimony, J.D. exited her apartment on June 3, 2002, to take some newspapers out for recycling. J.D. left her door unlocked when she returned to her apartment and lied down on her bed. She later realized someone was standing by her bed, and J.D. saw Defendant standing over her with her kitchen shears in his hand. Defendant demanded money, and then he bit J.D.'s breast and forced J.D. to have sexual intercourse with him. J.D. later gave Defendant some juice to drink and a peach to eat.

J.D. called her doctor and the police after Defendant left. J.D. was examined and treated at a hospital that night. The police later retrieved the scissors, the sheet that had been on J.D.'s bed, the partially eaten peach, and the mug which Defendant had used.

Salma Ahmad, M.D., testified that he examined J.D. following her assault. J.D. reported to Dr. Ahmad that an attacker had forced sexual intercourse by vaginal penetration and had attempted but failed rectal penetration. The sexual assault exam Dr. Ahmad performed revealed that J.D. had bleeding from her vagina, and abrasions in the vaginal and genital areas.

Officer Mark Keisker (Keisker) also testified during Defendant's trial. Keisker responded to J.D.'s report of burglary and rape on June 3, 2002. During a search of the area around J.D.'s apartment, Keisker observed Defendant, whose appearance matched J.D.'s description of her attacker. After Keisker and another officer questioned Defendant and discovered he had outstanding warrants, they arrested him. When Keisker searched Defendant, he found a gold ruby and diamond earring in Defendant's pants pocket, which L.S. later identified as hers that was stolen.

During trial, the State additionally presented the testimony of Donna Becherer (Becherer), the Biology and DNA section supervisor for the St. Louis Metropolitan Police Department Crime Lab. Becherer conducts DNA analysis, but, as a supervisor, she also reviews her subordinates' biology reports and the DNA reports and insures that she agrees with any conclusions made in the reports.

When the State presented a lab report authored by Dr. Jaganadha Kandala to Becherer for identification, Becherer acknowledged that the report was written by Dr. Kandala, an analyst she formerly supervised in the crime lab. Becherer further stated that she had reviewed the report and the associating data when Dr. Kandala prepared it. Dr. Kandala's report profiled his analysis of items retrieved from J.D.'s apartment, including a swab of the mug used by J.D.'s attacker, a swab of the peach partially eaten by her attacker, and an analysis of a cutting from Defendant's underwear. At the time of Defendant's trial, Dr. Kandala was employed in a crime lab in San Bernardino, California.

When Becherer reviewed Dr. Kandala's report, she reviewed the raw data developed by the instrument that determined the DNA profile from the evidence. She also reviewed the comparisons between the

known individuals and the evidence samples. Becherer stated that Dr. Kandala's analysis demonstrated a match, to a reasonable degree of scientific certainty, that the DNA profiles found on the items were either that of Defendant or his identical twin.

Becherer also reviewed the findings and report of crime lab technician Jennifer Schoenholz (Schoenholz), who testified at trial. Schoenholz analyzed a buccal swab obtained from Defendant, a swab of the mug, a swab of the peach, cuttings from Defendant's underwear, and cuttings from the sheet retrieved from J.D.'s bed.

Schoenholz testified that the DNA profile of Defendant's buccal swab matched, to a reasonable degree of scientific certainty, the DNA profile of the underwear cuttings, the sheet cutting, the peach swab and the mug swab.

Becherer testified that, as Schoenholz's supervisor, she compared the profile of the buccal swab analyzed by Schoenholz with the profiles of the items analyzed by Dr. Kandala and determined they matched, to a reasonable degree of scientific certainty, excluding an identical twin.

At the conclusion of trial, the jury found Defendant guilty on all counts. Defendant did not file a motion for new trial.

### Points on Appeal

Defendant raises three points on appeal. In his first point, Defendant claims the trial court clearly or plainly erred in denying his motion to continue his case, discharge his counsel and proceed pro se because his request was reasonable under the circumstances and the denial prejudiced him in that: 1) Trial Counsel had met him only three times to discuss his case; 2) Trial Counsel did not listen to Defendant; 3) Trial Counsel wanted more money from Defendant; 4) Defendant did not want Trial Counsel to represent him; 5) Defendant understood the risks of representing himself; and 6) there was a reasonable likelihood the trial court's error contributed to the jury's guilty verdict.

In his second point, Defendant claims the trial court clearly or plainly erred in denying Defendant's motion to sever the offenses on the ground of improper joinder because Defendant's cases were not the same or similar in character, connected together, or parts of a common scheme or plan. Defendant asserts the attacks differed in that: 1) L.S.'s attacker entered an empty apartment and J.D.'s attacker entered her apartment while she was home; 2) no weapon was used in L.S.'s attack while J.D. was attacked with scissors; and 3) L.S. was in her twenties and J.D. was in her seventies.

In his third point, Defendant claims the trial court clearly or plainly erred in admitting Becherer's testimony concerning Dr. Kandala's testimonial out-of-court statements in his DNA testing report.

### Standard of Review

Because Defendant did not file a motion for new trial, he requests we review his claim for plain error under Rule 30.20. To obtain relief under Rule 30.20, Defendant must demonstrate error affecting his rights so substantially that a miscarriage of justice or manifest injustice results if the error is not corrected. *State v. Love*, 963 S.W.2d 236, 245 (Mo.App. W.D.1997).

### Discussion

*Motion for Continuance and Pro Se Representation*

Defendant's first point claims the trial court erroneously denied his request to continue his case, withdraw his counsel, and to proceed pro se. We disagree.

First, we note that Defendant made two requests for continuance and discharge of counsel, and one request for pro se representation. The first request for continuance and discharge of counsel was presented and heard before the criminal assignment judge (motion court). The subsequent motion for continuance, discharge of counsel, and pro se representation was heard by the trial court. Defendant does not appeal from the motion court's order denying his request for continuance and discharge of counsel, but appeals only the trial court's denial of his motion for continuance, discharge of counsel, and pro se representation.

■ The decisions of trial courts to deny a motion for continuance to allow a party to obtain different counsel and to allow counsel to withdraw are discretionary. *State v. Lee*, 521 S.W.2d 180, 182 (Mo.App.1975). To obtain a change of attorney on the eve of trial, a defendant must show an "irreconcilable conflict" with counsel, which is a total breakdown in communication between the defendant and his attorney. *State v. Parker*, 886 S.W.2d 908, 929 (Mo. banc 1994); *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989). Disagreement about defense strategy does not equate a total breakdown in communication. *See Parker*, 886 S.W.2d at 929. Nor does a general dissatisfaction with the amount of time defendant is able to spend with counsel. *See State v. Anthony*, 837 S.W.2d 941, 944 (Mo.App. E.D.1992). Furthermore, while a defendant has a right to legal counsel, he is not entitled to the aid of a particular attorney as a matter of constitutional right. *State v. Taylor*, 778 S.W.2d 276, 279 (Mo.App. W.D.1989). The right to be represented by counsel of one's own choosing is qualified by the public's right to the effective and efficient administration of justice. *Id.*

■ The record before us does not lead us to conclude that Defendant had an irreconcilable conflict and total breakdown of communication with his retained counsel such that the trial court erred by not allowing counsel to withdraw and granting Defendant a continuance to retain substitute counsel. The ultimate determination as to whether a defendant should be allowed to discharge his attorney or whether defense counsel should be allowed to withdraw on the eve of trial, are matters within the discretion of the trial court. *Hornbuckle*, 769 S.W.2d at 96. We will not interfere with the trial court's rulings on this issue unless it clearly appears that the court abused its discretion. *Id.*

Here, the charges against Defendant had been pending since 2002. Although Trial Attorney had represented Defendant for almost one year, Defendant did not request a continuance to allow him to find new counsel until the day of trial. During the motion hearing, Trial Attorney testified as to the investigation she had undertaken on his behalf and indicated that she was prepared to try Defendant's case. Given the delay that would be involved in granting Defendant's request and the lack of any showing that Defendant would be denied skilled and effective representation, the motion court refused to grant Defendant a continuance to find other counsel. Only after the Motion court denied Defendant's request for continuance and the proceedings began did Defendant then seek leave of the trial court to represent himself at trial. The note filed by Defendant with the trial court requested that Trial Attorney be removed from Defendant's case; he asked to proceed pro-se and said he believed he could better represent himself, if better prepared, with other legal counsel. Upon receiving Defendant's written request, the trial court ceased the voir dire proceedings and made an immediate inquiry of Defendant. The following exchange

occurred between the trial court and Defendant:

THE COURT: The record should reflect that we are in chambers with Mr. Rice and counsel outside the hearing of any jurors.

Mr. Rice, I need to have you see over that stack of papers. I received a written motion from you asking that [Trial Counsel] be removed and that you be allowed to go pro se and that you be given time to prepare with other legal counsel. Is that a fair statement?

THE DEFENDANT: Yes, sir.

THE COURT: Are you prepared to represent yourself for the rest of this trial beginning this week, during—

THE DEFENDANT: No, sir.

THE COURT: —beginning right now?

THE DEFENDANT: No, sir.

THE COURT: I didn't think so. I think—sir, this is essentially the same type of request that was raised before, basically one to remove [Trial Counsel] and in essence be granted a continuance, and that is a matter that, as I indicated yesterday, is handled by the criminal assignment chief judge, who is Judge Sweeney, who ruled yesterday denying that motion. Is there anything else you want to say that you haven't said before me or to Judge Sweeney?

THE DEFENDANT: No.

■ An accused has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so, and a state may not force counsel upon him when he insists that he desires to conduct his own defense. *State v. Edwards*, 592 S.W.2d 308, 310 (Mo.App. S.D. 1980). However, an accused's right to counsel of his own choosing, is limited to the extent it impinges on the public's right to effective and efficient administration of

justice. *State v. Morris*, 591 S.W.2d 165, 168 (Mo.App. E.D.1979).

Although the note prepared by Defendant and filed with the trial court used the words "pro se," the exchange between Defendant and the trial court made it clear that Defendant was neither prepared to move forward with the trial pro-se, nor truly intended to represent himself pro se. As noted by the trial court, Defendant's request was essentially another request for a continuance to allow him an opportunity to obtain other counsel, a request upon which the motion court had already ruled. Defendant's written request made to the trial court during the course of voir dire was not an unequivocal request to proceed pro se. When questioned in chambers, Defendant stated that he was not prepared to represent himself; rather, he indicated that he wanted time to prepare with other legal counsel. Because Defendant's request to proceed pro se was equivocal and arguably retracted, we conclude the refusal by the trial court likewise was not an abuse of discretion. We find no error, plain or otherwise. Defendant's first point is denied.

*Improper Joinder*

■ Defendant's second point claims error in the trial court's denial of his motion to sever his offenses on the grounds of improper joinder. Liberal joinder is favored in the interest of judicial economy. *State v. Langston*, 889 S.W.2d 93, 96 (Mo. App. E.D.1994). Joinder of two or more offenses is proper if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Section 545.140(2).

In Defendant's case, the acts committed are decidedly similar. In each instance, the attacker unlawfully entered an apartment, a sexual attack was involved, the

victims were women living alone in the apartments, the attacker bit the victims, and the attacker demanded money. Furthermore, the charged offenses arose out of only two incidents that occurred very close in time and geographical proximity, and the evidence pertaining to each offense was not complex. Thus, joinder of the offenses was proper.

When considering a motion to sever, the trial court must weigh the benefits of trying the offenses together against the potential prejudice to the defendant. The trial court's decision should be based solely on the State's evidence. *Langston*, 889 S.W.2d at 96. A trial court's denial of a motion to sever will be disturbed only for an abuse of discretion. *Id.*

Our review of the record shows no abuse of discretion, much less plain error, in the trial court's denial of Defendant's motion to sever offenses. As to any potential prejudice, we find no reason to believe the jury could not distinguish between the evidence and legal principles applicable to each crime. Although Defendant claims the evidence involved complicated issues because DNA evidence was presented to connect Defendant with the attacks on J.D., we disagree that the nature of this evidence was so complex. Qualified witnesses explained the results of the DNA testing in straightforward terms laymen could easily grasp. The facts of each attack were simple and distinct, and the evidence as to each was such that the jury could consider each incident separately. Defendant failed to make a particularized showing of substantial prejudice if the offenses were not tried separately. We find no error, plain or otherwise, in the trial court's decision to deny Defendant's motion to sever. Defendant's second point is denied.

*Testimony of Donna Becherer*

Defendant's third point claims the trial court plainly erred in admitting Bech-erer's testimony about Dr. Kandala's report because the State failed to show that Dr. Kandala was unavailable to testify and Defendant had not had any prior opportunity to cross-examine him. Specifically, Defendant claims Dr. Kandala's report was "testimonial" and the admission of testimony about the report violated his constitutional rights to confrontation and cross-examination. Even were we to assume, *arguendo*, that the report qualifies as a "testimonial statement" invoking Defendant's Sixth Amendment constitutional rights to confrontation and cross-examination, any error in the admission of this testimony would constitute harmless error. *See e.g., State v. Davidson*, 242 S.W.3d 409, 417–18 (Mo.App. E.D.2007). The evidence of Defendant's guilt was substantial. Both victims testified at trial and identified Defendant as their attacker. One of the earrings stolen from L.S. was found on Defendant's person when he was arrested. The report of a crime lab technician who performed the DNA analysis of Defendant's buccal swab and swabs of items retrieved from J.D.'s apartment was also admitted at trial, and its preparer testified at trial as to her findings of a DNA match to Defendant. Even if the trial court had excluded Dr. Kandala's report and Becherer's testimony concerning the report, we conclude that the jury would have found Defendant guilty of the charged offenses. Defendant's third point is denied.

*Conclusion*

The judgment of the trial court is affirmed.

Lawrence E. Mooney, P.J., and Booker T. Shaw, J., concur.