### STATE of Missouri, Respondent,

v.

### David N. BRIGGS, Appellant.

### No. WD 70538.

Missouri Court of Appeals, Western District.

June 15, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 2010.

Application for Transfer Denied Sept. 21, 2010.

Laura G. Martin, Kansas City, MO, for Appellant.

James B. Fransworth, Jefferson City, MO, for Respondent.

Before THOMAS H. NEWTON, C.J., JAMES EDWARD WELSH, and ALOK AHUJA, JJ.

JAMES EDWARD WELSH, Judge.

David N. Briggs appeals the circuit court's judgment convicting him of one count of murder in the first degree, one count of robbery in the first degree, and two counts of armed criminal action. In his sole point on appeal, Briggs claims that the circuit court plainly erred in denying his request to be represented by private counsel instead of his public defender. We disagree and affirm the circuit court's judgment.

When Briggs was arraigned on February 25, 2008, the public defender's office announced that it had found Briggs to be eligible for its services. The following day, his public defender, Jeffrey Gedbaw, filed a motion for discovery on Briggs's behalf. Gedbaw represented Briggs throughout the pendency of the case, up to and including Briggs's trial, which began on December 8, 2008. On the first day of trial, Gedbaw represented Briggs in conducting *voir dire*, and, by the time the first day ended, the jury had been selected.

On the morning of the second day, Briggs informed the court that he wanted to change counsel. The following exchange occurred:

THE COURT: Mr. Gedbaw, you said you have something to take up this morning?

MR. GEDBAW: Yes, your Honor. My client informed me down in the holding cell that his family has retained private counsel for him. I don't know the specifics or details of that. I think the defendant would like to address the Court regarding that.

THE COURT: Okay. Go ahead, Mr. Briggs.

THE DEFENDANT: Your Honor, I have recently obtained information that could help me out in this case that Jeff has relinquished not—to withhold and not tell me. And I feel that I would have a better chance with a paid attorney in this case. I'm asking for that.

THE COURT: You recently obtained information that what?

THE DEFENDANT: Information that could help me in this case.

THE COURT: I think you are stalling, Mr. Briggs. I tell you what. We have a jury picked after a laborious *voir dire*. You can talk to Mr. Gedbaw if you have some information that you think will help and let him make the decision on the strategy you use in the case. Okay?

We are going ahead with the trial. I'm not going to stop it so you can hire a private attorney at this point.

Trial proceeded with the public defender representing Briggs. Briggs acknowledges that he did not raise in his motion for new trial the issue of the circuit court's denial of his request to be represented by private counsel. He, therefore, concedes that he did not preserve this issue for our review but requests that we review his claim for plain error under Rule 30.20.

 A review for plain error pursuant to Rule 30.20 involves a two-step analysis. *State v. Robinson,* 194 S.W.3d 379, 381 (Mo.App.2006). First, we must determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc), *cert. denied,* 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995) (quoting Rule 30.20). We must decide "whether, on the face of the claim, plain error has, in fact, occurred." *State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App.2001). "Plain errors are those that are evident, obvious and clear." *State v. Hawthorne,* 74 S.W.3d 826, 829 (Mo. App.2002). In the absence of evident, obvious, and clear error, this court should decline to exercise our discretion to review the claimed error under Rule 30.20. *Dudley,* 51 S.W.3d at 53. If, however, we find plain error on the face of the claim, in our discretion, we may continue to the second step to consider whether or not a miscar-

riage of justice or manifest injustice will occur if the error is left uncorrected. *Id.* Briggs's claim does not facially establish substantial grounds for believing that he has been a victim of manifest injustice.

 Although Briggs has a constitutional right to legal counsel, he does not have an absolute right to be represented by counsel of his own choosing. *State v. Jefferies,* 504 S.W.2d 6, 7 (Mo.1974). His constitutional right to counsel does not mean that he is entitled to the aid of a particular attorney. *State v. Williams,* 419 S.W.2d 49, 54 (Mo.1967). His right to be represented by counsel of his own choosing is limited to the extent that it impinges on the public's right to effective and efficient administration of justice.[1] *Jefferies,* 504 S.W.2d at 7.

 The circuit court has broad discretion in ruling upon a request by the defendant to discharge counsel and to appoint substitute counsel. *State v. Rice,* 249 S.W.3d 245, 251 (Mo.App.2008). "To warrant substitution of counsel, a defendant must show 'justifiable dissatisfaction' with appointed counsel." *State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo. banc 1989). "To obtain a change of attorney on the eve of trial, a defendant must show an 'irreconcilable conflict' with counsel, which is a total breakdown in communication between the defendant and his attorney." *Rice,* 249 S.W.3d at 251. Mere disagreement about strategy does not equate to a total breakdown in communication. *Id.*

---

1. Briggs cites *United States v. Gonzalez–Lopez,* 548 U.S. 140, 144, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006), in support of his contention that his constitutional right to counsel includes "the right of a defendant who does not require appointed counsel to choose who will represent him." In *Gonzalez–Lopez,* however, the defendant was not attempting to change attorneys after the trial began. Indeed, the *Gonzalez–Lopez* court specifically stated, "Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice." *Id.* at 151, 126 S.Ct. 2557. The court recognized that a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Id.* at 152, 126 S.Ct. 2557 (citations omitted).

■ In this case, Briggs did not ask for the change of attorney on the eve of trial but waited until after the completion of voir dire to make his request. In asking for the change of attorney, Briggs merely told the circuit court that he had obtained information that he thought would help him in his case and that his appointed counsel had not "relinquished" or told him about this information. Even had Briggs asked for the change of attorney before the trial began, he did not establish that an 'irreconcilable conflict' existed between him and his counsel. The failure of appointed counsel to relinquish or tell Briggs about information that might be helpful to Briggs in his case does not show that "a total breakdown in communication" existed between them.

■ Briggs contends, however, that the circuit court should have at least made an informal inquiry as to whether substitution was warranted. In support of his contention, Briggs relies on *State v. Fields*, 636 S.W.2d 76, 80–81 (Mo.App.1982). In *Fields*, this court's Eastern District held that the circuit court has an obligation to make at least an informal inquiry to determine whether any incident has occurred to warrant a substitution of attorneys. *Id.* Contrary to what Briggs contends, the circuit court did make an informal inquiry concerning Briggs's desire to substitute attorneys. Once it was brought to the circuit court's attention that Briggs wanted to change attorneys, the circuit court let Briggs make his record and address the court. Briggs told the circuit court that appointed counsel did not "relinquish" or tell Briggs about information that might be helpful to Briggs's case and that he believed that he "would have a better chance with a paid attorney." Such an

inquiry was sufficient under *Fields,* given the plain error standard of review.[2]

Although Briggs contends that the circuit court erroneously assumed that Briggs would require a continuance if substitution were allowed, when Briggs made no continuance request (at least explicitly), such an assumption was not unfounded where a mid-stream request to change counsel is made in a first-degree murder case. Moreover, Briggs did not provide the court with any information as to retained counsel's identity, presence in the courtroom, or availability and preparedness to continue the ongoing trial.

Briggs also claims that the circuit court erred in allowing a public defender to represent him because he was not really indigent and, therefore, did not qualify for the services of the public defender. This argument is without merit.

The record establishes that the public defender's office determined, at the beginning of the case, that Briggs qualified for its services. Pursuant to section 600.086.3, RSMo 2000, to qualify for the public defender's services, Briggs had to file with the court an affidavit containing factual information supporting his claim of indigency. Thus, it is disingenuous for Briggs to argue that the public defender should not have been representing him because he was not indigent. Indeed, section 600.086.4 says that "[a]ny person who intentionally falsifies such affidavit in order to obtain state public defender system services shall be guilty of a class A misdemeanor."

■ Moreover, section 600.086.3 says:

The determination of indigency of any person seeking the services of the state public defender system shall be made by

---

2. After hearing Briggs's explanation, the circuit court viewed it with skepticism and believed that Briggs was merely stalling. We

discern no evident, obvious, and clear error with the circuit court's handling of Briggs's request for substituting attorneys.

the defender or anyone serving under him at any stage of the proceedings. Upon motion by either party, the court in which the case is pending shall have authority to determine whether the services of the public defender may be utilized by the defendant. Upon the courts finding that the defendant is not indigent, the public defender shall no longer represent the defendant.

According to this section, the public defender's office, not the circuit court, is responsible for determining whether a defendant financially qualifies for its services. If Briggs managed to gather enough resources to disqualify himself from the public defender's services, it was incumbent upon the public defender to make that determination and for either the public defender or Briggs to file a motion with the circuit court to determine whether the services of the public defender were needed. Neither Briggs nor the public defender filed such a motion. Indeed, the public defender did not even file a motion seeking to withdraw from the case.

 Briggs claims that to allow the public defender's office to represent a non-indigent client violates "the spirit of the entire Chapter 600." But, nothing in Chapter 600 suggests that appointing an attorney to a non-indigent defendant is reversible error. The spirit (and purpose) of Chapter 600 is to give effect to the Sixth Amendment guarantee that all criminal defendants are entitled to the assistance of counsel. If occasionally a non-indigent defendant receives appointed counsel even though he technically does not qualify, the spirit of the law—to ensure that every defendant is represented—is not undermined in the least.

The circuit court did not plainly err in permitting the public defender to represent Briggs or in refusing Briggs's mid-trial request to bring in new counsel. We, therefore, affirm the circuit court's judgment.

All concur.