

# In the Missouri Court of Appeals
## Eastern District
### DIVISON FOUR

STATE OF MISSOURI,            )       No. ED100872

                             )

      Respondent,             )       Appeal from the Circuit Court of

                             )       St. Louis County

vs.                               )

                             )

WILLIAM COBBINS,          )       Honorable Kristine A. Kerr

                             )

      Appellant.              )       Filed: October 14, 2014

### *Introduction*

William Cobbins (Defendant) appeals the judgment of the Circuit Court of St. Louis County convicting him of kidnapping, first-degree robbery, and two counts of armed criminal action. Defendant claims the trial court abused its discretion in denying his Motion to Remove Counsel and Appoint New Counsel ("Motion to Remove Counsel") and defense counsel's motion to withdraw. We affirm.

### *Factual and Procedural Background*

Viewed in the light most favorable to the verdict, the evidence at trial established that, at approximately 9:30 p.m. on August 28, 2012, Defendant approached Jiujia Shao (Victim), a law student, in a parking garage on the campus of Washington University. As Victim opened the door of her car, Defendant grabbed her purse from her shoulder, pushed her into the driver's seat, and shut the door. Defendant then sat in the backseat behind Victim and, holding a knife to Victim's waist, ordered her to "keep quiet and go."

Defendant directed Victim to drive to an ATM machine at Lindell Bank, where he attempted to use Victim's debit card to withdraw money. Defendant then ordered Victim to drive to a Bank of America in the City of St. Louis, where he successfully withdrew money from Victim's account. After approximately one and a half hours of driving around the city, Defendant ordered Victim to drop him off. Before exiting the car, Defendant warned Victim not to freeze her account before 2:00 p.m. the next day because "he kn[e]w . . . where I live, where I go to school. So he said he will come back if I fr[eeze] it before 2 p.m."

On October 23, 2012, the State charged Defendant with one count of kidnapping (Count I), one count of robbery in the first degree (Count III), and two counts of armed criminal action (Counts II and IV). Defense counsel entered his appearance on November 29, 2012. On June 25, 2013, the trial court scheduled Defendant's case for trial on October 28, 2013.

On September 3, 2013, Defendant filed a pro se Motion to Remove Counsel. In his motion, Defendant alleged the following: defense counsel has not "pursued my case vigorously"; "I have missing discovery and that the alleged victim needs to be deposed"; "I have been forced to file my own motion to compel for the missing items that the state should have provided"; and "I have paid [defense counsel] over $2,200.00 and can not [sic] afford to hire a new attorney." Defendant also filed a pro se motion for continuance seeking additional time "to obtain all missing discovery and to depose the alleged victim . . . ." Neither Defendant nor defense counsel noticed up these motions for hearing, and the trial court did not rule upon them.

On October 20, 2013, Defendant wrote a letter to the trial court communicating his dissatisfaction with defense counsel's representation. In particular, Defendant complained that, despite Defendant's repeated requests, defense counsel failed to depose Victim. Defendant asserted that "depositions would be mandatory in this type of case" and "[t]his is unprofessional

conduct, which I will address with the Office Of [sic] Chief Disciplinary Counsel." Defendant further complained that, because the State obtained from Defendant "new fingerprints," which was "nothing more than an intimidation tactic," Defendant would "need to depose the officer that took my prints . . . ." Defendant concluded: "I fully intend to receive a fair trial, in spite of [defense counsel's] shortcomings."

On the same date, Defendant wrote a letter to defense counsel "to let [him] know that [his] last visit was disappointing to say the least." Defendant alleged: "You are supposed to be my defense attorney, not a sub-contractor for the prosecutor. It should have only taken you a cursory [sic] inspection of my case in the beginning to know that depositions would be mandatory, not optional." Defendant further asserted defense counsel must depose the "original fingerprint expert for the purpose of showing that the state is only playing intimidation games that you are abetting."

Defendant sent a second letter to the trial court on October 23, 2014 alleging:

> Today [defense counsel] came to the Jail to speak with me. During our conversation [defense counsel] insisted that I did not have the right to depose the alleged victim in this case. I know this to be a bold face lie. I have read the Missouri Court Rules of Discovery concerning depositions, specifically Rule 25.12. [Defense counsel] has repeatedly refused to obtain depositions that I have requested.

Defendant asserted that he had filed a complaint with the Office of Chief Disciplinary Counsel.

On the morning of trial, defense counsel filed a motion to withdraw. In his motion, defense counsel alleged that Defendant had filed a complaint against him with the Missouri Bar and had accused him of "unprofessional conduct," "being a sub-contractor for the prosecutor," and lying about Defendant's right to depose Victim.

The trial court conducted a pre-trial hearing on defense counsel's motion to withdraw. At the hearing, defense counsel announced that the basis of his motion to withdraw was "the fact

3

that [Defendant], has filed with the Office of Chief Disciplinary Counsel, the Missouri Bar, a complaint against myself." Defense counsel further stated:

> Judge, it's my understanding, the basis of said complaint, the defendant is alleging counsel informed him he did not have a right to depose the victim. Judge, counsel vehemently disagrees with that, so there is a difference of opinion between counsel and defendant.
> Also, I believe the basis of [Defendant's] complaint with the Missouri Bar is that he accused counsel of unprofessional conduct and also in lying to him in regards to his right to depose the victim.
> Judge, as you are aware, that counsel has never informed [Defendant] he did not have a right to depose the victim. In fact, in my ten years of practice – and I have deposed many victims in many different criminal actions.
> So counsel knows that not to be true; that defendant, in any criminal case, has an absolute right to depose the victim. Be that as it may, defendant is making the allegation that counsel has failed to conduct full discovery in this case by not deposing the victim in this case. In another letter sent to the Court, the defendant indicates his desire to depose the fingerprint examiner in this matter.

Defense counsel concluded: "I believe that an irreconcilable conflict exists between counsel and [Defendant] that would hamper [Defendant's] right to a fair trial."

Defense counsel then examined Defendant, and Defendant affirmed that defense counsel provided him discovery from the State, including the police report and photographs, and arranged for Defendant to view the surveillance videos. However, Defendant maintained that defense counsel informed him he "did not have the right to depose the victim," "lied" to him, and behaved unprofessionally. Defendant therefore believed "there exists, by the nature of [his] complaints to the Court and to the Bar, a conflict of interest" between counsel and Defendant and "that conflict is irreconcilable."

The trial court also questioned Defendant and defense counsel about defense counsel's representation. Defendant stated that, in addition to his concerns about the "conflict between [him] and [defense counsel] about this deposition issue," Defendant had "complaints with [defense counsel] of lack of communication with [him] prior to his case" and had "been trying to

4

get [defense counsel] to do depositions since May . . . ." In regard to the "deposition issue," defense counsel explained that he had recently interviewed Victim:

> Friday of last week, the prosecutor made available the complaining witness in this case. [Defendant] sent to counsel a list of questions that he wishes – he wished for me to ask the victim. I asked those questions to the victim.
> Yesterday I saw [Defendant] at the jail and I communicated to him the responses to the questions that the victim gave.[1]

Defense counsel also stated that Defendant had asked him "to depose the victim maybe a week and a half, two weeks ago" and he informed Defendant that "the prosecutor was bringing in the victim a week prior to trial and that if he wanted me depose the victim that week before, we could have, and that the cost of that deposition would be his." Although defense counsel discussed payment of the cost of deposition with Defendant's mother, "it was never brought to [his] office." Defense counsel affirmed that the purpose of a deposition "is to have a chance, ahead of trial to learn what somebody's going to say and to understand whether or not their statements are largely the same as what's in the police report or something startling [sic] different" and that he "had a chance to talk to the victim" and knew "what she's going to say."

The prosecutor opposed defense counsel's motion to withdraw, arguing that, in the absence of an irreconcilable conflict, defendant could not discharge counsel at the beginning of the trial. The prosecutor explained that there was no "total breakdown of communication" between Defendant and defense counsel because "[t]here's been extensive from what – as I understand the record, extensive communication between [defense counsel] and his client. Where there's a difference is [sic] over strategy."

---

[1] Defense counsel recounted to the trial court the nature of the questions Defendant provided him: "the questions included asking the victim her status as a citizen in this country; her relationship status; her address; whose decision it was to contact the police after she was released from captivity; where was her car parked after returning to her apartment; where did she go immediately after being released."

In regard to defense counsel's alleged failure to depose Victim, the prosecutor explained that Victim lived in Virginia and "was not able to get here . . . until last week."  The prosecutor stated he had made Victim available to defense counsel, defense counsel interviewed Victim the previous week, and defense counsel asked Victim the questions Defendant desired asked.  The prosecutor therefore asserted that "whatever strategic conflict there may have been between [defense counsel] and [Defendant] has now been resolved and I think we can proceed."  The prosecutor added that Defendant "had in his possession" Victim's written statement and the reports made by the Washington University Police Department and St. Louis County Police, "[s]o there's been extensive, extensive discovery."

After hearing the arguments and evidence, the trial court denied defense counsel's motion to withdraw.  The trial court explained its ruling:

> The Court is fully aware of the Hornbuckle[2] decision.  The Court notes:  To warrant substitution of counsel, the defendant has to show justifiable dissatisfaction. . . . The Court also has to temper its decision by the public's need for effective administration of justice. . . .
> It sounds like the defendant has all the discovery he's entitled to; he's had opportunities to have his lawyer ask questions he wanted to ask; he understands the evidence against him.

After the trial, the jury found Defendant guilty of all four counts.  The trial court sentenced Defendant to concurrent terms of twelve years' imprisonment for Count I, eight years' imprisonment for Count II, and ten years' imprisonment for Count III, to run consecutively with a term of four years' imprisonment for Count IV, for a total sentence of sixteen years.  Defendant appeals.

---

[2] State v. Hornbuckle, 769 S.W.2d 89 (Mo. banc 1989).

6

## Standard of Review

"The ultimate determination as to whether a defendant should be allowed to discharge his attorney, or whether defense counsel should be allowed to withdraw, are matters within the discretion of the trial court." State v. Hornbuckle, 769 S.W.2d 89, 96 (Mo. banc 1989). "Appellate courts will not interfere with a trial court's exercise of discretion unless it clearly appears that it has been abused, and the appellate court will indulge every intendment in favor of the trial court." Id. "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." State v. Mason, 428 S.W.3d 746, 749 (Mo.App.E.D. 2014).

## Discussion

In his point on appeal, Defendant claims the trial court abused its discretion in overruling his Motion to Remove Counsel and defense counsel's motion to withdraw because "there existed an irreconcilable conflict between them with a total breakdown of communication . . . ." The State counters that the trial court did not abuse its discretion in denying defense counsel's motion to withdraw "because there was no evidence of a total breakdown in communication."[3]

Although a criminal defendant enjoys "a constitutional right to legal counsel, he does not have an absolute right to be represented by counsel of his own choosing." State v. Briggs, 318 S.W.3d 203, 206 (Mo.App.W.D. 2010) (citing State v. Jefferies, 504 S.W.2d 6, 7 (Mo. 1974)). "The right to be represented by counsel of one's own choosing is qualified by the public's right to the effective and efficient administration of justice." State v. Rice, 249 S.W.3d 245, 251 (Mo.App.E.D. 2008).

---

[3] We note that the State does not respond directly to Defendant's claim regarding the trial court's denial of his Motion to Remove Counsel.

"To obtain a change of attorney on the eve of trial, a defendant must show an 'irreconcilable conflict' with counsel, which is a total breakdown in communication between the defendant and his attorney." Briggs, 318 S.W.3d at 207 (quoting Rice, 249 S.W.3d at 251). Neither disagreement about trial strategy nor a general dissatisfaction with the amount of time defendant is able to spend with counsel is sufficient to establish a total breakdown in communication. Rice, 249 S.W.3d at 251.

In support of defense counsel's motion to withdraw, Defendant testified that an irreconcilable conflict existed between him and defense counsel because defense counsel "lied" to him about his right to depose Victim. Defense counsel denied the allegation that he lied to Defendant and explained that: he was not able to interview Victim until the week before trial because she lived out of state; defense counsel informed Defendant that he would depose Victim at Defendant's expense, but Defendant did not pay deposition costs; and defense counsel interviewed Victim, asked her the questions requested by Defendant, and communicated the information he obtained to Defendant. The trial court was free to believe defense counsel and disbelieve Defendant. State v. Williams, 9 S.W.3d 3, 10 (Mo.App.W.D. 1999). Furthermore, Defendant's grievances as to defense counsel's failure to depose Victim relate to trial strategy and do not constitute a total breakdown in communication. See, e.g., Briggs, 318 S.W.3d at 207.

Finally, the evidence belied Defendant's complaints regarding defense counsel's "lack of communication with [him] prior to the case." Indeed, the evidence at the hearing demonstrated "substantial interchange" between Defendant and defense counsel in preparing for trial. State v. Bullock, 655 S.W.2d 628, 631 (Mo.App.W.D. 1983). Based on our review of the record, we conclude that the trial court did not abuse its discretion in denying defense counsel's motion to withdraw as counsel.

In regard to Defendant's Motion to Remove Counsel, we note that the trial court did not rule on this motion. Furthermore, nothing in the record indicates either that defense counsel was aware Defendant had filed the motion or that Defendant made an effort to notice up his motion for a hearing. Rule 24.04(b)(4). "Motions before a trial court are not self-executing and it is the obligation of the party who files the motion to notice it up for a hearing or otherwise bring it to the trial court's attention." State v. Celis-Garcia, 420 S.W.3d 723, 726 (Mo.App.W.D. 2014).

To the extent that we might consider the trial court's failure to rule on Defendant's Motion to Remove Counsel to be a denial of the motion, we find no error. Motions to discharge or substitute counsel are subject to the trial court's discretion and, to be entitled to substitution of counsel, a defendant must "produce objective evidence of a 'total breakdown in communication.'" State v. Owsley, 959 S.W.2d 789, 792 (Mo. banc 1997) (quoting Hornbuckle, 769 S.W.2d at 96)).

In his motion to remove counsel, Defendant alleged: defense counsel had failed to "pursue my case vigorously"; "I have missing discovery and [] the alleged victim needs to be deposed"; "I have been forced to file my own motion to compel for the missing items that the state should have provided"; "I have paid [defense counsel] over $2,200.00 and can not [sic] afford to hire a new attorney"; and "I have asked [defense counsel] for a refund of most of the money that has been paid to him for the reason that he has not communicated with me regarding my legitimate request for deposition and missing material . . . ." These claims are insufficient to establish irreconcilable conflict. See, e.g., id. at 793. The alleged failure of defense counsel to obtain the desired discovery or depose Victim does not establish "total breakdown in communication." See, e.g., Briggs, 318 S.W.3d at 207. Point denied.

### *Conclusion*

The judgment of the trial court is affirmed.

_____
Patricia L. Cohen, Presiding Judge

Roy L. Richter, J., and
Robert M. Clayton III, J., concur.

10