Charles R. HOWELL, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 71772.

Missouri Court of Appeals,
Western District.

Jan. 24, 2012.

---

S. Kate Webber, Kansas City, MO, for appellant.

Timothy Blackwell and Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Division Three: JAMES E. WELSH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

JAMES M. SMART, JR., Judge.

Charles Howell appeals the denial of his Rule 29.15 motion for post-conviction relief after an evidentiary hearing. On appeal, he raises a claim of ineffective assistance of appellate counsel. We affirm.

## Factual and Procedural Background

In May 2003, Charles Howell was charged by a grand jury indictment in the Circuit Court of Cass County with the class A felony of robbery in the first degree and armed criminal action. The charges stemmed from Howell's involvement in the robbery of a Pizza Hut restaurant in July 2002. In May 2004, Howell was convicted following a jury trial on both counts. The trial court sentenced him to ten years' imprisonment for first-degree robbery and five years' imprisonment for armed criminal action, to run consecutively. Howell appealed. This court affirmed his convictions and sentences in a *per curiam* order in *State v. Howell*, 203 S.W.3d 801 (Mo.App.2006). Howell filed a *pro se* Rule 29.15 motion for post-conviction relief and appointed counsel filed an amended motion, claiming ineffective assistance of appellate counsel. After an evidentiary hearing, the motion court denied his post-conviction motion. Howell appeals.

On appeal, Howell contends the motion court erred in denying his Rule 29.15 motion for post-conviction relief in violation of his due process rights, his right to effective assistance of counsel, and to be represented by counsel of his choice. Howell

argues that his appellate counsel was ineffective for failing to raise the following claims on direct appeal: 1) that the trial court erred in denying his request for a continuance in order to be represented by counsel of his own choosing; and 2) the trial court erred in denying his appointed counsel's motion to withdraw.

## Standard of Review

Appellate review of a motion court's denial of a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the court's findings of fact and conclusions of law are clearly erroneous. *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009). The motion court's findings and conclusions are presumed correct and will be overturned only if, after a review of the record, this court is left with a definite and firm impression that a mistake has been made. *Id.*

### Establishing Ineffective Assistance of Counsel

Consideration of an ineffective assistance of counsel claim is guided by the principle that judicial scrutiny of counsel's performance must be highly deferential. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that counsel's performance fell within the range of reasonable professional assistance and that the challenged action might be considered reasonable strategy. *Id.* Thus, the movant has a heavy burden to overcome the presumption. *Taylor v. State*, 234 S.W.3d 532, 535 (Mo.App.2007). This requires a showing that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. The movant must demonstrate both that counsel's performance was deficient and that counsel's alleged failures resulted in prejudice. *Id.* at 687, 104 S.Ct.

2052; *Johnson v. State*, 189 S.W.3d 640, 644 (Mo.App.2006).

To prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it. *Taylor v. State*, 262 S.W.3d 231, 253 (Mo. banc 2008); *Williams v. State*, 168 S.W.3d 433, 444 (Mo. banc 2005). If the movant establishes that counsel's performance was not reasonably competent, then the movant must show that he was prejudiced. *Tisius v. State*, 183 S.W.3d 207, 211–12 (Mo. banc 2006). To demonstrate prejudice, the movant must show that the claimed error was sufficiently serious to create a reasonable probability that, if appellate counsel had raised the claim, the outcome of the appeal would have been different. *Id.* at 212.

### Claim of Ineffective Assistance of Appellate Counsel based on Failure to Challenge Trial Court's Denial of Continuance Request

 Howell first argues that his appellate counsel was ineffective in failing to challenge the trial court's denial of his request for a continuance in order to be represented by counsel of his own choosing. He contends that appellate counsel's performance was deficient in failing to advance this claim on direct appeal.

In reviewing the denial of a motion for continuance, this court gives great deference to the sound discretion of the trial court. *State v. Taylor*, 778 S.W.2d 276, 279 (Mo.App.1989). The trial court's denial of a request for a continuance to allow a defendant to obtain different counsel is highly discretionary. *State v. Rice*, 249 S.W.3d 245, 251 (Mo.App.2008). Because the trial court has broad discretion in granting or denying a continuance, this

court will not interfere with the trial court's ruling on this issue absent a clear showing of abuse of discretion. *Id.*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to have assistance of counsel for his defense. U.S. CONST. amend. VI; *Wheat v. United States,* 486 U.S. 153, 158, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). The right to assistance of counsel was designed to assure fairness in the adversary criminal process. *Wheat,* 486 U.S. at 158, 108 S.Ct. 1692. Thus, while the Sixth Amendment comprehends the right to be represented by counsel of choice, the essential aim of the amendment is to guarantee an effective advocate for the defendant, rather than to ensure that the defendant will inevitably be represented by a particular attorney whom he prefers. *Id.* at 159, 108 S.Ct. 1692.

Missouri courts have long recognized that a criminal defendant has an unquestioned right to retain legal counsel to handle his or her defense. *State v. Drane,* 581 S.W.2d 89, 91 (Mo.App.1979). However, while a defendant in a criminal prosecution has the right to assistance of counsel, the right to choice of counsel is not absolute. *State ex rel. Horn v. Ray,* 325 S.W.3d 500, 510 (Mo.App.2010). Thus, depending on the facts and circumstances of the case, a defendant's right to legal counsel does not automatically entitle the defendant to an unqualified right to assistance of a particular attorney. *Taylor,* 778 S.W.2d at 279.

When a continuance is sought to retain or replace counsel, the right to be represented by counsel of choice must be carefully balanced against the public's interest in the orderly administration of justice. *Urquhart v. Lockhart,* 726 F.2d 1316, 1319 (8th Cir.1984).[1] Trial judges necessarily require a great deal of latitude in scheduling trials, assembling the parties, witnesses, lawyers, and prospective jurors. *Id.* Consequently, this burden counsels against the repeated grant of continuances except for compelling reasons. *Id.* Given the broad discretion granted to trial courts on matters of continuances, only an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay" would constitute a violation of a defendant's right to the assistance of counsel. *Id.* The trial court's discretionary determination involves balancing the right to counsel of choice against the needs of fairness, and against the demands of the court's calendar. *United States v. Gonzalez–Lopez,* 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006).[2]

1. In *Urquhart,* the defendant claimed he was erroneously denied his right to effective assistance of counsel when the trial judge would not grant a continuance so new counsel could be retained. *Id.* at 1319. Urquhart alleged that his mother was willing to pay for retained counsel to handle his case. *Id.* He also claimed that he had informed his appointed counsel of this fact three weeks before trial. *Id.* On the day of trial, Urquhart requested a continuance to enable him to retain counsel of his choice, which the court denied. *Id.* In affirming the district court's decision, the Eighth Circuit held that, "[u]nder the circumstances of this case, it cannot be said that the trial court violated Urquhart's [S]ixth [A]mendment right to counsel in not granting the continuance. The question of a continuance was not presented to the court until the day of trial." *Id.* The court concluded that "the public's interest in the efficient administration of justice justified the trial court's refusal to grant a continuance." *Id.*

2. We note that Howell cites this case in support of his argument. The issue before the United States Supreme Court in *Gonzalez–Lopez* was whether the erroneous deprivation of a defendant's counsel of choice entitled him to an automatic reversal of his conviction without a harmless error analysis under the Sixth Amendment to the United States Constitution. *Id.* Unlike the instant case, however, in *Gonzalez–Lopez,* the prosecution *did not*

There are many circumstances in which the orderly administration of justice or other significant factors may supersede a defendant's right to preferred counsel of choice. For instance, the right to be represented by counsel of choice does not extend to defendants who cannot afford a particular attorney, or where appointed counsel is required due to indigency, or if for other reasons, private counsel declines to represent the defendant. *Wheat*, 486 U.S. at 159, 108 S.Ct. 1692. Furthermore, the right to be represented by counsel of one's own choosing is limited to the extent that it impinges upon the public's right to the effective and efficient administration of justice. *State v. Briggs*, 318 S.W.3d 203, 206 (Mo.App.2010). A defendant has no constitutional right to continue to insist upon representation by a particular attorney who may not be available due to scheduling conflicts, nor can a defendant postpone the case indefinitely and delay the proceedings at the expense of the court, its schedule, the government, the parties, and the witnesses. *United States v. Hughey*, 147 F.3d 423, 429 (5th Cir. 1998); *United States v. Barrentine*, 591 F.2d 1069, 1075 (5th Cir.1979).

"[T]he right to counsel does not automatically override a broader public interest in the effective administration of justice and maintenance of public confidence in the integrity of our legal system." *Ray*, 325 S.W.3d at 511 (citing *Wheat*, 486 U.S. at 158 n. 2, 108 S.Ct. 1692). Thus, where considerations of judicial administration supervene, the presumption in favor of counsel of choice is rebutted and the right must give way. *United States v. Voigt*, 89 F.3d 1050, 1074 (3d Cir.1996).

The constitutional right to legal counsel is not an absolute right to be represented by counsel of choice and does not mean that a defendant is automatically guaranteed or entitled to the aid of a particular attorney. *Briggs*, 318 S.W.3d at 206. The right to substitute counsel is limited by the state's right to proceed to trial after the accused has been afforded a fair opportunity to engage his own counsel and adequate time to prepare his defense, and does not include the right to defeat or impede the orderly processes of the administration of justice. *Id.* Last-minute requests to substitute counsel must not be allowed to become a tactic for delay. *Tuitt v. Fair*, 822 F.2d 166, 172 (1st Cir.1987), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987); *see also Briggs*, 318 S.W.3d at 205.

In *Briggs*, a defendant who had been appointed counsel after being charged with first-degree robbery and armed criminal action claimed that the circuit court had plainly erred in denying his request to be represented by private counsel instead of a public defender. 318 S.W.3d at 205. On the morning of the second day of trial, after the completion of *voir dire*, appointed counsel informed the court that the defendant had notified him that his family had retained private counsel for him. *Id.* The defendant told the court that he "would have a better chance with a paid attorney in this case." *Id.* At that point, the judge stated that he believed the defendant was stalling and denied his request to stop the trial so that he could hire a private attorney. *Id.* at 206. The trial proceeded with

---

*dispute that the defendant had improperly been denied his right to choice of counsel. Id.* The disputed issue concerned whether the conceded error was "structural" in nature, *i.e.,* reversible without harmless error analysis. Also, this case did not involve a defendant who was attempting to substitute counsel *after the trial began.* The Court also specifically stated, "Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice." *Id.* at 151, 126 S.Ct. 2557.

appointed counsel representing the defendant. *Id.*

On appeal, this court affirmed the circuit court's denial of the defendant's request to substitute counsel after the trial had already commenced, noting that the court had broad discretion in ruling upon such a request and that the right to counsel of one's own choosing is limited and not absolute. *Id.* In response to defendant's argument that he was "not really indigent" and, thus, no longer qualified for the services of the public defender, this court found that the record established at the beginning of the case that the defendant was eligible to have appointed counsel. *Id.* at 207.[3]

Furthermore, to obtain a change of counsel on the eve of trial, this court indicated that the defendant would have to show there had been an "irreconcilable conflict" with counsel, which amounted to a total breakdown in communication with his attorney. *Id.* at 206 (citing *Rice*, 249 S.W.3d at 251). The defendant failed to establish that an "irreconcilable conflict" existed between him and his counsel. *Id.* at 207. "Mere disagreement about strategy does not equate to a total breakdown in communication." *Id.* at 206. Absent strong justification, the trial court is not required to grant a continuance in order to allow a defendant to substitute appointed counsel for another attorney whom he may prefer. *Taylor*, 778 S.W.2d at 279.

In *Taylor*, this court held that the trial court did not abuse its discretion in denying a motion for continuance on the day of trial in order for the defendant to be allowed to substitute appointed counsel for another attorney of his own choosing. *Id.* at 279–80. The defendant in *Taylor* had

been continuously represented by the public defender's office since his arraignment until the time of trial, and the defense had been granted three continuances. *Id.* at 279–80. In affirming the judgment, this court held that it was clearly not an abuse of discretion for the trial court to deny the defendant's motion for a continuance to substitute counsel, which was presented on the day of trial, after the defendant had already been granted three continuances. *Id.* at 280.

In this case, the motion court issued its decision in October 2009, denying Howell's post-conviction motion, and concluding that appellate counsel was not ineffective for failing to raise the alleged claims of error. In its judgment, the motion court entered the following findings of fact and conclusions of law, in pertinent part:

## FINDINGS OF FACT

The Movant was charged ... with one count of first degree robbery and one count of armed criminal action. The charges stemmed from an armed robbery of a Pizza Hut involving three men. The case was tried ... on May 25–26, 2004. Laura G. Martin, Assistant Public Defender, represented Movant at trial. Approximately two weeks prior to trial, on May 10, 2004, the trial court held a pre-trial conference. *At that conference, Movant did not raise any issues regarding representation.* A second pre-trial conference was held on May 24, 2004, one day prior to trial. At that conference, Ms. Martin filed a Motion to Withdraw, arguing that Movant had allegedly paid a private attorney $240.00 to represent [him] at trial.... [The Judge] de-

---

**3.** The court also noted, in *Briggs*, that "[t]he spirit (and purpose) of Chapter 600 is to give effect to the Sixth Amendment guarantee that all criminal defendants are entitled to the assistance of counsel. If occasionally a non- indigent defendant receives appointed counsel even though he technically does not qualify, the spirit of the law—to ensure that every defendant is represented—is not undermined in the least." 318 S.W.3d at 206.

nied the Motion, noting that *no entry of appearance had been filed by private counsel.* Ms. Martin further argued that the Movant's right to counsel of his own choosing was violated by the Court's failure to grant the Motion to Withdraw. [The Judge] responded that if private counsel appeared for trial, he would be permitted to represent the Defendant; however no one had filed an entry of appearance or motion to continue.

The following morning, Ms. Martin requested a continuance, which was denied. Voir dire began at 9:30 a.m. At 9:52 a.m. the Court received a fax from attorney John Price entering his appearance in the case. *Mr. Price did not request a continuance or appear before the Court.* Ms. Martin represented the Movant throughout trial and at sentencing. *Mr. Price never appeared before the Court* [.]

\* \* \* \* \* \*

## CONCLUSIONS OF LAW

In the present case, the Movant was charged by indictment on May 28, 2003. *He was found to be indigent,* and Gary Allen, Assistant Public Defender, was assigned to the case. Mr. Allen left the Public Defender's Office in March 2004 and Laura Martin was assigned to the case. Ms. Martin filed a motion to continue from a March trial setting. Without objection by the State, the trial court granted the continuance and reset the case for May 25, 2005[sic]. Movant claimed to have hired Mr. Price on May 18, 2005[sic] for a deposit of $240.

Based upon the evidence, the Court finds that Movant was not deprived of his right to counsel. *Movant had ample and fair opportunity to obtain a private attorney—almost a year. Ms. Martin was ready to proceed to trial. Movant's failure to retain counsel until the eve of* *trial, and Mr. Price's failure to enter his appearance until after the trial had commenced, impinged on the efficient administration of justice. See State v. Wade,* 535 S.W.2d 492, 496 (Mo.App. 1976) (Defendant not deprived of constitutional right to counsel when, on the morning of trial, he sought time to employ counsel of his own choice in lieu of public defender. Defendant claimed he had hired an attorney who failed to appear.)

The Court further notes that trial courts have great discretion in granting or denying a continuance, and it requires a very strong showing to a higher court to interfere. An appellate court will only disturb the action of the trial court if it is an abuse of discretion. *State v. Thomas,* 433 S.W.2d 537, 539 (Mo.1968). *Appellate counsel was not ineffective for failing to raise the ground before the appellate court. Based upon the standard of law, a reasonably competent attorney, recognizing the issue of right to retain counsel or continuance, would not raise it. However, even if, arguendo, the issue should have been raised, this Court, again based upon the facts and controlling case law, does not find that there is a reasonable probability that, if it was raised, the outcome of the appeal would have been different.*

The Court notes that in Movant's Amended Motion, an argument is made that Ms. Martin should have been granted leave to withdraw based upon Public Defender CFRs. *The Court finds this argument is without merit. Movant was found indigent to proceed. The Public Defender's Office did not argue against their appointment in the case until after approximately one year of representation.* The argument that the Public Defender should have been permitted to withdraw is a based upon (1)

the alleged payment of $240.00 from Movant to Mr. Price; and (2) the fact that Movant had retained counsel in two Jackson County criminal cases. The Court finds that based upon the facts of the underlying criminal case, it is unreasonable to believe that any competent counsel would appear in a first degree robbery and armed criminal action case for $240.00. *Movant did not offer any facts to [the Judge] that he had the ability to adequately fund a defense by private counsel, or the underlying facts surrounding the hiring of private counsel in the two Jackson County cases, including the types of cases in Jackson County, who actually paid for counsel, and whether or not his resources had changed since the appointment of counsel in Cass County.*

*Based upon these facts, appellate counsel was not ineffective for failing to raise the ground before the appellate court. Based upon the standard of law, a reasonably competent attorney, recognizing the issue, would not raise it. However, even if, arguendo, the issue should have been raised, this Court, again based upon the facts, does not find that there is a reasonable probability that, if it was raised, the outcome of the appeal would have been different [.]* [Emphasis added.]

Despite Howell's assertion that he had retained John Price to represent him on unrelated criminal charges brought against him in Jackson County, and that he wanted to have Price represent him in this case rather than appointed counsel, the trial court was not required to discharge appointed counsel on the eve of the trial, especially when no entry of appearance had been filed by Price.

The record supports the motion court's finding that Howell was found to be indigent after being charged in May 2003 with the two felonies in Cass County. The docket information reflects that Howell was eligible to be represented by the public defender's office shortly after his arraignment and that appointed counsel appeared on his behalf beginning in June 2003. The record also indicates that the case was originally set for trial in December 2003. At a pre-trial conference in November 2003, appointed counsel appeared and requested a continuance which was granted without objection. The trial date was reset for March 2004. On February 20, 2004, an entry of appearance was filed by assistant public defender, Laura Martin, to represent Howell.[4] On that same date, Martin filed a second motion for continuance which was granted without objection. By agreement of the parties, the case was reset for trial on May 25, 2004. A pre-trial conference was set for May 10, 2004.

At the pre-trial conference on May 10, the prosecuting attorney appeared, Howell appeared in person, and was represented by Martin. There was no mention of any representation issues by either Howell or Martin at that conference.[5] Martin and the prosecuting attorney agreed to meet with the court for one more conference to discuss any pre-trial matters on May 24, 2004, the eve of the trial. In preparation for trial, discovery requests were made by both parties and subpoenas were issued and served on witnesses who were sched-

---

4. The record indicates that Howell's initial appointed counsel left the public defender's office due to health issues.

5. In the motion for new trial, Howell alleged that the week before the trial, the prosecuting attorney and Martin had a telephone conference with the trial court and that Martin informed the court that she would be filing a motion to withdraw "based on Howell's non-indigency status under Chapter 600, RSMo."

uled to appear at the trial. Martin had reviewed the case, met with Howell, and was aware of the witnesses the State intended to call. She also filed motions on Howell's behalf, including a motion *in limine* and a motion to endorse witnesses.

On May 24, 2004, the eve of the trial, Martin filed a motion to withdraw, asserting that Howell had informed her that he had retained Price to represent him on two unrelated cases in Jackson County. Martin also told the court that Howell had a receipt for $240, which he claimed was the amount he had paid for Price to represent him in this case. Martin stated that Howell had informed her that Price intended to fax an entry of appearance to the court and that Price was engaged in another trial in Jackson County. After considering the matter, the trial court denied Martin's motion to withdraw and stated that it would not grant a continuance. In response, Martin affirmatively stated that *she was not asking for a continuance.* Martin then told the court that Howell wished to make a record that he believed his rights were being violated "by not being represented by an attorney of his own choosing" and that he was not satisfied with the services of the public defender who had previously represented him. The court responded as follows:

> THE COURT: And my response is very similar to the one that I made when you talked about it before, and that is this, *nobody is keeping your client from having an attorney of his own choosing but your client. Your client has no attorney of his own choosing. It is now twenty minutes after four on the eve of trial, and the courthouse closes in ten minutes. We have no Entry of Appearance from any attorney of his own choosing.* I don't know the man that he claims to have hired. I have a receipt for $240.00 that's been signed by a man named Price. That could be [for] mowing his lawn, for all I know. If he was that concerned about his client or his client was that concerned about having an attorney of his own choosing represent him, there could of at least be in this office a faxed motion for continuance, and we are talking about a case that has been set for trial for months.

> MS. MARTIN: I understand that, Your Honor.

> THE COURT: It just doesn't work that way. You don't come waltzing in the morning of trial, and say, "I want to have a continuance," on a case that is a year old and in a case which, *certainly, he has had an opportunity to hire an attorney of his own choosing for that entire twelve-month period the case has been before the Circuit Division, and before that, when the case was in the Associate Division for who knows how long. So that's the record. There is no attorney that has entered an appearance or requested a continuance on behalf of the Defendant.* [Emphasis added.]

The judge then told the parties to meet back at the court at 8:30 a.m. the following day to discuss any pre-trial matters and that jury selection would begin at 9:30 a.m. On the morning of the trial, May 25, 2004, Martin informed the court that it was her understanding that Price's legal assistant had contacted the circuit clerk concerning an entry of appearance that Price intended to fax to the court. Based on this information, Martin again asked to withdraw from the case and requested a continuance, to which the prosecutor objected, and the court denied.

At 9:36 a.m., the court called the case and asked the parties if they were ready to proceed. Both the prosecuting attorney and Martin stated that they were ready to proceed and jury selection began. The

prosecutor then proceeded to address the venire panel to explain the jury selection process and began questioning the venire-persons. After the jury selection was completed and prior to opening arguments, the court informed the parties that it had received notice that an entry of appearance had been faxed by Price at 9:52 a.m., and a "Notice of Engaged Counsel" was faxed at 10:52 a.m., both after the commencement of the trial. Price did not, however, file a continuance request.

The trial proceeded for two days. Martin filed motions for judgment of acquittal at the end of the State's evidence and again at the end of all of the evidence. Both motions were denied. After deliberation, the jury found Howell guilty on both counts of first-degree robbery and armed criminal action. Martin filed a motion for new trial which was also denied. On June 28, 2004, Martin appeared with Howell at the sentencing hearing. When the court asked Howell where his "retained counsel" was, he responded, "he was supposed to be here."

Based on our review of the facts and circumstances of this case, we cannot conclude that the trial court abused its discretion in denying the continuance request on the day of the trial. The case had been pending for a year. Howell had been continuously represented by appointed counsel since his arraignment in 2003. The trial court was ready to proceed. The prosecutor and defense counsel were prepared and ready for trial. The venire panel was present and ready to proceed, and the prosecution had witnesses scheduled to testify. The court asked if there was any reason why it should not proceed with the trial and both attorneys indicated that they were ready to proceed. Price did not fax over his entry of appearance until after the trial began, nor did he file a continuance. In fact, there is nothing in

the record to suggest that Price ever showed up in court at any time throughout the entire trial to represent Howell or request a continuance.

The trial court had broad discretion in determining whether to grant or deny a continuance to substitute counsel, especially on the day of trial, when such an untimely request would inevitably have delayed the trial and impeded the efficient administration of justice. Under these circumstances, we find that the trial court made a reasonable determination to proceed with the trial on the scheduled date, especially considering that the attorneys were prepared to proceed, the jury and witnesses were assembled, and the court had already granted two previous continuances for the defense. Essentially, the trial court was faced with either proceeding to trial with prepared counsel and witnesses, or the prospect that a "phantom" lawyer would at some point *maybe* show up to represent Howell. It is clear from the record that Price never showed up in court at any time during the trial to represent Howell. As such, we cannot conclude that the trial court abused its discretion in denying the continuance request to substitute counsel and in allowing the trial to proceed with appointed counsel.

### Appellate Counsel was not Ineffective

We next address Howell's claim that appellate counsel was ineffective for failing to raise the foregoing issue on direct appeal. There is a strong presumption that counsel rendered adequate assistance and made all the significant decisions in the exercise of reasonable professional judgment. *Kelley v. State,* 24 S.W.3d 228, 232 (Mo.App.2000). Appellate counsel is not required to raise every claim asserted in a motion for new trial and has no duty to present non-frivolous issues where counsel has made a strategic decision to raise the most favorable arguments on appeal. *Storey v. State,* 175 S.W.3d 116, 148 (Mo.

banc 2005). The process of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (internal quotation omitted).

Here, appellate counsel's testimony was submitted by deposition to the motion court. In his deposition, appellate counsel testified that he had reviewed the legal file, the trial transcript, and all of the claims alleged in the motion for new trial. In determining which issues to raise on appeal, counsel indicated that he raised the claims that he believed had the most merit and the greatest likelihood of persuading the appellate court. He also indicated that he saw no benefit in presenting a meritless claim to the appellate court. He stated that the reason he did not raise the issue of counsel of choice on direct appeal was because he believed that based on the trial court's comments regarding the untimeliness of the request to substitute counsel, especially considering the case had been pending for months, that the court was not required to continue the case based on a "promise" that private counsel would appear, when no entry of appearance had been filed before trial. Counsel believed that the appellate court would view the trial court as having acted reasonably in exercising its discretion. He further stated that he did not think the appellate court would have been persuaded that the trial court had committed any kind of error or that the failure to raise this claim would be prejudicial.

Appellate counsel also testified that after reviewing the claims alleged in the motion for new trial, he determined that some of the claims were weaker than others. Based on his reasonable and professional belief that the appellate court would not be persuaded by presenting every claim raised in the motion for new trial regardless of merit, counsel selected and presented only the strongest contentions of error on appeal. It is clear from the record that appellate counsel made a reasonable and calculated decision not to present this claim on appeal. Appellate counsel's reasonable selection of those arguments most likely to prevail on appeal does not present a sufficient basis for a claim of ineffective assistance of counsel.

The motion court concluded that appellate counsel was not ineffective in failing to raise this claim before the appellate court. Based on our own review of the record, we also conclude that Howell has not overcome the strong presumption that his appellate counsel was effective. He did not show that appellate counsel's alleged error was so obvious that a competent and effective lawyer would have recognized it and asserted it. He failed to show that counsel's representation fell below an objective standard of reasonableness by not raising the alleged claims of error on appeal. Furthermore, Howell's allegations do not support a finding of a reasonable probability that, had this issue been raised, the appellate court would have determined that the trial court abused its discretion in denying appointed counsel's request for a continuance on the day of trial in order for Howell to obtain private counsel. Thus, Howell has failed to demonstrate that the outcome of the appeal would have been different had this alleged claim of error been asserted. As such, we cannot conclude that the motion court erred in determining that appellate counsel was not ineffective.

### Claim of Ineffective Assistance of Appellate Counsel based on Failure to Challenge Trial Court's Denial of Appointed Counsel's Request to Withdraw

In the argument portion of his Point Relied On, Howell also contends that his

appellate counsel was ineffective for failing to challenge the trial court's denial of defense counsel's motion to withdraw. However, Howell did not raise this claim in his Point Relied On. Rather, he raises it for the first time in the argument portion of his brief. It is well settled that errors raised for the first time in the argument portion of a brief, and that are not raised in the point relied on, need not be considered by this court. *Stirewalt v. Stirewalt*, 307 S.W.3d 701, 704 n. 5 (Mo.App.2010); *Woods v. Friendly Ford, Inc.*, 248 S.W.3d 665, 676 n. 11 (Mo.App.2008); *Pearman v. Dep't of Soc. Servs.*, 48 S.W.3d 54, 55 (Mo. App.2001).

In any event, we find this claim to be without merit. The ultimate determination as to whether defense counsel should have been allowed to withdraw on the eve of trial was within the sound discretion of the trial court. *Rice*, 249 S.W.3d at 251. Martin's request to withdraw from the case was based solely on Howell's assertion that he had retained private counsel to represent him on unrelated charges in Jackson County, and a $240 receipt that Howell claimed was a payment for private counsel.

In the motion to withdraw filed on the eve of trial, Martin alleged that even though Howell was found to be indigent and eligible for public defender services after being charged with two felonies in Cass County, he was no longer indigent "by virtue of hiring private counsel" on May 18, 2004, to represent him on "two other pending felony cases" in Jackson County. Consequently, Martin assumed that because "it appears that Mr. Howell does have the means at his disposal to employ counsel" in the other cases, he was "no longer indigent" and, thus, ineligible for public defender services *in this case*.

In his amended post-conviction motion, Howell alleged that he had retained Price to represent him in this case, as well as in the two Jackson County cases, on or about May 18, 2004. Howell further alleged that "Price had informed Martin" that he would not be able to appear at the trial on the scheduled date, but that he would file a "Notice of Engaged Counsel." At the evidentiary hearing, however, Martin stated that she did not recall ever speaking to Price either before or after the trial.

Martin also stated that Howell had *not informed* her at the May 10th conference that he was planning to hire private counsel. Furthermore, Howell failed to show that he had adequate resources to hire private counsel. Howell indicated that Price was requesting $5,000 to represent him in this case. The fact that Howell announced to the trial court on the eve of trial that he had retained Price to represent him in this case by presenting a receipt for $240, which he claimed was a deposit on a retainer fee, does not dictate a finding that he was financially able to pay the necessary expenses required to hire a private attorney, or automatically entitle him to substitute counsel who was unavailable. Howell offered no information to the court regarding when Price might be available, or whether he had even reviewed the case. The trial court was clearly not required to grant a last-minute continuance that would have inevitably delayed the trial and impeded the administration of justice. The trial court's denial of appointed counsel's request to withdraw on the day of the trial was well within its discretion. As such, we find there is no reason to conclude that the court abused its discretion in denying the request to withdraw and allowing Martin, who represented Howell well, to continue representing Howell at the trial.

With regard to Howell's claim that appellate counsel was ineffective for failing to raise this issue on appeal, appel-

late counsel testified in his deposition that after reviewing this claim, he determined not to raise it for a number of reasons. First, counsel indicated that he had considered the trial court's comments with regard to having no assurance that private counsel would be able and ready to proceed to trial, especially since it was evident that Price was unavailable at the time of the trial and that the court would not have been able to proceed without Howell being represented by counsel. Appellate counsel also indicated that he believed the appellate court would find that the trial court acted reasonably and did not abuse its discretion in denying the request to withdraw. He further indicated that the appellate court would not view the trial court's ruling as unreasonable or arbitrary, or find that any prejudice had resulted. He also stated that he did not want to present a meritless claim on appeal.

After examining the record, we find no probability that this claim, had it been raised by appellate counsel, would have prevailed or changed the outcome of the appeal. Appellate counsel cannot be deemed ineffective for failing to raise a nonmeritorious claim. *Glover v. State*, 225 S.W.3d 425, 429 (Mo. banc 2007). Based on our review of the record, we cannot conclude that appellate counsel was ineffective.

## Conclusion

For the foregoing reasons, we find that the motion court did not clearly err in denying Howell's motion for post-conviction relief.

Accordingly, we affirm the judgment.

All concur.