**Harvey L. SHOATE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**WD 79646**

Missouri Court of Appeals,
Western District.

OPINION FILED: June 27, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied
August 1, 2017

Application for Transfer to Supreme Court Denied October 31, 2017

S. Kathleen Webber, Assistant Appellate Defender, Kansas City, MO, Attorney for Appellant.

Joshua D. Hawley, Attorney General, and Mary H. Moore, Assistant Attorney General, Jefferson City, MO, Attorneys for Respondent.

Before Division Two: Thomas H. Newton, Presiding Judge, and James Edward Welsh and Karen King Mitchell, Judges

Karen King Mitchell, Judge

Harvey Shoate, Jr., appeals, following an evidentiary hearing, from the grant of his Rule 24.035 [1] motion for post-conviction relief. Though Shoate's sentences were vacated and the motion court awarded him a new sentencing hearing, Shoate argues that one of the motion court's findings was clearly erroneous and that the relief awarded was too broad. Because the right to appeal is limited to parties that are aggrieved by a lower court's judgment and Shoate is not aggrieved, we dismiss this appeal.

## Background

Shoate was charged, as a persistent felony offender, with one count of first-degree involuntary manslaughter and three counts of second-degree assault after he drove with a blood alcohol content of .226 and caused a collision between his vehicle and that of the Godding family, resulting in the death of Gregory Godding (the father) and severe injuries to Donna Godding (the mother) and the two Godding children. Shoate had been released on parole from a prior incarceration just 36 hours before the collision with the Godding vehicle.

Shoate decided to plead guilty to the charges. At the plea hearing, the court discussed the existence of a plea agreement with Shoate:

Q  My understanding the plea agreement—there is a basic plea understanding which is you're going to plead guilty to all of the charges and that sentencing will be deferred, and it will be left totally to me to make my best judgment.

A  Yes.

Q  And the only agreement is the sentences will run concurrently with each other. In other words running all at the same time; do you understand that?

A  Yes, sir.

The court then advised Shoate of the various rights attendant to a trial that he was relinquishing through his guilty plea, as well as the range of punishment for his charged crimes. Shoate acknowledged understanding all of it and reiterated his intent to plead guilty. Shoate denied any threats, coercion, or promises inducing his pleas and acknowledged that he was pleading guilty of his own free will because he was, in fact, guilty as charged. Shoate expressed satisfaction with plea counsel and denied having any complaints. The court accepted Shoate's guilty pleas, ordered a Sentencing Assessment Report (SAR), and deferred the matter for sentencing.

At the sentencing hearing, the court received victim-impact testimony from Donna Godding, one of the two Godding children, Gregory Godding's mother, and Gregory Godding's cousin, as well as mitigation evidence from Shoate's fiancée and her daughter, Shoate's neighbor, and Shoate's mother, along with a statement from Shoate. The court also received the SAR, which indicated that Shoate had a total of ten prior felony convictions—four of which involved driving while intoxicated, and suggested a sentence of twenty-five to thirty years. The State argued for a twenty-five-year sentence on manslaughter, concurrent with ten-year sentences on each assault, specifically noting that Shoate would be required to serve at least 85% of the manslaughter sentence.

---

1. All rule references are to the Missouri Supreme Court Rules (2017), unless otherwise noted.

In mitigation, Plea Counsel argued that sentences of twenty-five or thirty years should be reserved for those who intentionally take a life and, while Shoate's actions were reckless and irresponsible, he never intended to take a life. Plea Counsel acknowledged that Shoate deserved imprisonment of some kind but also a chance for treatment and rehabilitation. Plea Counsel then proposed "a creative way to satisfy everybody":

> I came up with a structure, and I would like to propose it to Your Honor. If we could give him the minimum on the greatest charge—on the enhanced B felony, give him the minimum on that, but then run consecutive all the vehicular assaults, the Cs, which have the ability to be charged, I believe, up to 15, the court has discretion to do what they want, and run those with a suspended execution of sentence consecutive so that Mr. Shoate can go out, do what he's got to do, and then come out.

The court then pronounced sentence, along with its rationale for the sentence it was imposing:

> In the State of Missouri under this new statute, if you kill someone in a car accident, in some situations it is an 85 percent crime. This case that he faces is an 85 percent crime.
>
> So there are various ways to get at sentences, but if you give a sentence of 25 years on the underlying offense, it's a much different sentence than if you give them 25 years somewhere else.
>
> 25 years on the underlying offense would mean that he would serve 85 percent of that day for day before he's released. He would have a little time on parole afterwards.
>
> If you give him a sentence under another statute like, for example, the assault statutes that apply to the mother and the two children, those are not 85

percent sentences, and he can be subject to parole on those sentences, which means he would be subject to supervision. If he violated his parole, he would then be subject to go back on those sentences and his supervision would be longer.

> . . .
>
> I think that the integrity of the system—I think when you have this kind of carnage and you have the record of Mr. Shoate, it has to be a significant sentence. The dignity of the system requires it.
>
> By the same token, I'm not sure to have him have no hope of parole ever or at least for an extended period of time, whether that's necessarily the right thing to do either. So here is what I have done, and I'll explain to you what it is when I'm done.
>
> As relates to Count 1, I'm going to sentence him to 12 years in the Missouri Division of Adult Institutions. Further, on Counts 2, 3, and 4 I'm going to sentence him to 12 years in the Missouri Division of Adult Institutions. Counts 2, 3, and 4 shall run concurrently with each other, but they will run consecutively to the sentence imposed in Count 1 for a total of 24 years.
>
> . . .
>
> The sentence I have imposed, if there is any question about it, he's received a 24-year sentence of which he is not eligible for parole until after 85 percent of 12 years. That's the sentence that I have imposed, and that's the meaning of those sentences.

The court advised Shoate of his postconviction rights, and Shoate acknowledged understanding them.

Shoate subsequently filed a timely *pro se* Rule 24.035 motion, arguing that his sentence was excessive because the various

terms were not all run concurrently and that Plea Counsel was ineffective for not correcting the court's error in running one of the sentences consecutively, contrary to the plea agreement. Appointed counsel filed an amended motion, raising three new claims of ineffective assistance of plea counsel and including six *pro se* claims of error. The claims asserted in the amended motion were as follows:

Claim 8(A) – Ineffective assistance of plea counsel "for failing to investigate, prepare and present a defense that the rental car [Shoate was driving] was defective."

Claim 8(B) – Ineffective assistance of plea counsel for misrepresenting to Shoate "that [he] would not be sentenced to more than 12 years' imprisonment."

Claim 8(C) – Ineffective assistance of plea counsel "for failing to correct mistaken mandatory minimum for second-degree assault in SAR/inform the court of 80% mandatory minimum."[2]

Pro Se Claim #1 – "Plea counsel ... pressured and coerced Movant into pleading guilty."

Pro Se Claim #2 – "Plea counsel ... abandoned Movant by neglecting his case and making contact with him only three to four times throughout his representation."

Pro Se Claim #3 – "Plea counsel ... was not qualified to represent Movant on the offenses with which he was charged."

Pro Se Claim #4 – "Plea counsel ... wanted Movant's friend to testify falsely on his behalf about Movant's alcohol use on the date of the incident."

Pro Se Claim #5 – "Counsel [who] initially represented Movant ... also worked with the deceased victim's cousin, Bert Godding, who testified at Movant's sentencing."

Pro Se Claim #6 – "Movant's sentence is excessive."

The amended motion requested an evidentiary hearing, and included the following request for relief:

### REQUEST FOR RELIEF

After this Court holds an evidentiary hearing, Movant requests that this Court vacate the judgments and sentences in *State v. Harvey L. Shoate*, case no. 1016-CR03102, and set the case for a jury trial.

The motion court held an evidentiary hearing, wherein it received testimony from Plea Counsel and Shoate. At the hearing, Shoate waived Claim 8(A), and then presented evidence on the remaining claims. During the hearing, the facts that the plea agreement was for concurrent sentences and that one of Shoate's actual sentences was ordered to run consecutively was repeatedly addressed by both the attorneys and the witnesses. When asked

---

**2.** Shoate's amended motion pled that the SAR indicated, inaccurately, that the assault convictions would be subject to a mandatory minimum prison term of 66% of the sentence imposed before Shoate would become eligible for parole. At the evidentiary hearing, however, Plea Counsel testified that the SAR contained *no information* regarding minimum prison terms before Shoate would become parole eligible. The motion court made no finding regarding these conflicting factual allegations, and neither party has provided this court with a copy of the SAR in the record on appeal. Thus, it is unclear whether the SAR, in fact, misrepresented Shoate's mandatory minimum prison term before he became parole eligible. In any event, because Shoate had three prior prison commitments for unrelated felonies, the assaults were subjected to a mandatory minimum prison term of 80% of the sentence imposed before Shoate would become parole eligible. § 558.019.2(3), RSMo 2011.

about the reason for the discrepancy, Plea Counsel stated:

> I believe the reason would be—beyond on its face in the transcript what his reasoning was, I can speculate as to his intent.
>
> . . .
>
> [I]t seems like the Judge—despite the fact that he acknowledged the plea agreement—attempted to modify his sentence in a way to avoid Harvey from getting additional time through mandatory [minimum] sentencing.

Shoate, himself, testified that, had he known he might receive a consecutive sentence, he would not have pled guilty but would have pursued trial. When asked about Pro Se Claim #6 (claiming that Shoate's sentence was excessive), Shoate testified that his claim was based on Plea Counsel's failure to either object to the consecutive sentence or correct the alleged misinformation in the SAR:

> Q. Any other reason that you think Judge Atwell's sentence that he gave you—or sentences that he gave you were excessive?
>
> A. Well, I believe that, because of the misinformation on the sentencing assessment report and the fact that [Plea Counsel] didn't do the research on it, and when I was sentenced, he never objected, that Atwell thought he was actually helping me when, in actuality, I'm actually—due to the sentence the way it is, I'm doing three more extra months.
>
> Q. Months?
>
> A. Months.
>
> Q. Now, in fact, on the second degree assault cases, you do have the mandatory minimum of 80 percent on each of those, correct?
>
> A. Right.

The motion court found that Claim 8(A) had been abandoned and was, therefore, denied. The motion court denied Claim 8(B) on the ground that Plea Counsel testified that he never promised Shoate a maximum sentence of twelve years, and the motion court found this testimony to be credible.

As to Claim 8(C), the motion court found that Shoate demonstrated "that his plea counsel rendered ineffective assistance of counsel for failing to inform Judge Atwell that because of [Shoate's] three prior prison commitments, he would be required by statute to serve at least 80% of his sentence on all counts prior to becoming eligible for consideration for parole." The court elaborated:

> Reasonably competent counsel in plea counsel's position may have informed Judge Atwell that Movant was subject to an 80% statutory mandatory minimum on all charges in the underlying criminal case. There is no reasonable strategy in failing to inform the court of a significant mandatory minimum sentence. However, there is no assumption the court would more likely impose a lesser sentence if there was a significant statutory mandatory minimum that the defendant must serve before becoming eligible for parole. Movant fails to demonstrate a reasonable probability that the result of the proceeding would have been different.

The motion court then addressed what it perceived to be another aspect of Claim 8(C):

> Movant further argues under Claim 8(C) that his plea was made with the understanding he would receive concurrent sentences, and plea counsel failed to object or otherwise correct the record when Movant was sentenced to consecutive terms of imprisonment, thus, result-

ing in Movant receiving ineffective assistance of counsel.

The record clearly indicates the sentencing judge did not follow the terms of the plea agreement by sentencing Movant to consecutive sentences. Plea counsel should have made a record at the time of the plea (or requested Movant have the opportunity to withdraw his plea). By not doing so, plea counsel failed to exercise the required skill, care, and diligence that a reasonably competent attorney would have exercised in that situation. Further, Movant's defense was prejudiced by his counsel's failure to act because Movant pleaded guilty when he otherwise would not have done so. The Court finds plea counsel was ineffective for not objecting when the Court did not follow the plea agreement and sentenced Movant to consecutive sentences.

The motion court noted that, "[h]aving found Movant is entitled to relief on his claims, this Court must next determine the proper remedy." After noting that the proper remedy was within the discretion of the court, the motion court determined that resentencing was the appropriate remedy:

> In this case, Movant's expectation was to be sentenced within a range of punishment to run concurrent; not an agreement to be sentenced to a specific term of years. Specific performance as applied to the facts of this case allows for resentencing within the original terms of the plea agreement. Providing Movant with the remedy of being resentenced within the terms of the same plea agreement, in front of a judge other than the sentencing judge, will allow Movant to receive exactly what he bargained for prior to the sentencing judge not following the plea agreement.

The motion court then denied Shoate's *pro se* claims on the ground that Shoate "failed to show how he was prejudiced by the [*pro se*] errors he allege[d] in Claim 8(D) of his amended motion." The motion court concluded:

> Because Movant received ineffective assistance of counsel at sentencing and after the plea court had accepted Movant's guilty plea, it did not affect the voluntariness and intelligence of the plea, but only Movant's sentence. The appropriate remedy is for the Court to vacate Movant's sentences in the underlying criminal case and to grant Movant a new sentencing hearing.

Shoate appeals.

## Analysis

Despite the fact that Shoate prevailed on one of the claims raised in his amended motion, he appeals to this court, arguing that "[t]he motion court clearly erred in finding that Mr. Shoate failed to prove he was prejudiced by counsel's failure to inform the sentencing court that Mr. Shoate was required to serve a mandatory minimum of 80% of any sentence." This claim of error relates to Claim 8(C) of Shoate's amended motion—a claim the motion court granted, which causes us to question whether we have appellate jurisdiction. We conclude that we do not.

■ "Before we can address the merits of an appeal, this court has a duty to determine *sua sponte* whether we have jurisdiction to review the appeal." *Boeving v. Kander*, 493 S.W.3d 865, 872 (Mo. App. W.D. 2016) (quoting *Capital Fin. Loans, LLC v. Read*, 476 S.W.3d 925, 927 (Mo. App. W.D. 2015)). "If this [c]ourt lacks jurisdiction to entertain an appeal, the appeal must be dismissed." *Id.* (quoting *Fannie Mae v. Truong*, 361 S.W.3d 400, 403 (Mo. banc 2012)).

■ "In Missouri, the right to appeal is purely statutory, and where a statute does not give a right to appeal, no right exists." *Id.* (quoting *Fannie Mae*, 361 S.W.3d at 403). "An appeal without statutory sanction confers no authority upon an appellate court except to enter an order dismissing the appeal." *Id.* (quoting *Fannie Mae*, 361 S.W.3d at 405).

■ "A motion under Rule 24.035 is governed by the rules of civil procedure insofar as applicable." *Brooks v. State*, 242 S.W.3d 705, 708 (Mo. banc 2008). Section 512.020(5)[3] provides:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any ... [f]inal judgment in the case ....

"The statute, properly construed, means that a litigant must be aggrieved or injured by that particular judgment ... before he should have the right to appeal." *McClain v. Kansas City Bridge Co.*, 338 Mo. 7, 88 S.W.2d 1019, 1021 (Mo. 1935). Thus, two prerequisites to appeal are that (1) the party seeking appeal must be "aggrieved" by the trial court's judgment, *Quick v. Anderson*, 503 S.W.3d 242, 249 n.2 (Mo. App. W.D. 2016); and (2) that judgment must be final.

Rule 24.035(k) provides that "[a]n order sustaining or overruling a motion filed under the provisions of this Rule 24.035 shall be deemed a final judgment for purposes of appeal by the movant or the state." Rule 24.035(k). Here, we have a final judgment, but Shoate is not an "aggrieved" party.

■■ "A party is 'aggrieved' when the judgment operates prejudicially and directly on his personal or property rights or interest." *Quick*, 503 S.W.3d at 249 n.2 (quoting *In re Knichel*, 347 S.W.3d 127, 130 (Mo. App. E.D. 2011) (internal quotations and citation omitted)). But "[a] party cannot be said to be 'aggrieved,' unless error has been committed against him." *Fenton v. Thompson*, 352 Mo. 199, 176 S.W.2d 456, 460 (Mo. 1943) (quoting *Kinealy v. Macklin*, 67 Mo. 95, 99 (1877) (en banc)). "The law seems to be well settled that a party cannot take an appeal from a judgment in his own favor." *Kinealy*, 67 Mo. at 99. In other words, "[o]ne who is awarded the relief prayed is not an aggrieved party and may not appeal from the judgment in his favor." *Lowe v. Labor & Indus. Relations Comm'n*, 594 S.W.2d 365, 368 (Mo. App. W.D. 1980).

■ Though "[a] party may be aggrieved as to some issues but not others[, a] party cannot assert trial court error for actions by which it was not aggrieved." *In re Marriage of Allen*, 499 S.W.3d 735, 737 (Mo. App. S.D. 2016) (internal quotations and citations omitted). Even if a party seeks a ruling that could ultimately be detrimental to that party, if the party obtains the judgment sought, the party is not aggrieved so as to entitle that party to appeal. *Klagge v. Hyundai Motor Am.*, 148 S.W.3d 857, 859 (Mo. App. E.D. 2004).

■ Here, Shoate appeals from the motion court's finding on Claim 8(C) that Shoate was not prejudiced by Plea Counsel's failure to advise the court that Shoate would be subject to an 80% mandatory minimum prison term on the assault convictions before becoming parole eligible. Though this finding was adverse to Shoate, the motion court nonetheless granted

---

**3.** All statutory references are to the Revised Statutes of Missouri, 2000, as updated through the 2014 Cumulative Supplement, unless otherwise noted.

Shoate relief on Claim 8(C).[4]

■ Shoate argues that the motion court improperly granted relief on a claim he did not raise, as Claim 8(C)—as stated in the amended motion—did not challenge either the plea court's failure to follow the plea agreement or Plea Counsel's effectiveness with respect to challenging the plea court's failure to follow the plea agreement. Shoate did not, however, raise this claim of error in his point relied on. Instead, he focused solely on the motion court's finding that he suffered no prejudice from Plea Counsel's allegedly deficient performance. Thus, this claim is not properly before us on appeal. Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.'"); *Howell v. State*, 357 S.W.3d 236, 248 (Mo. App. W.D. 2012) ("It is well settled that errors raised for the first time in the argument portion of a brief, and that are not raised in the point relied on, need not be considered by this court.").[5]

■ Upon finding that Shoate was entitled to relief on one of his claims, the motion court then turned to the question of what kind of relief he should be given. The motion court determined that, because the error it found affected only Shoate's sentence and not the validity of his guilty pleas, his sentence should be vacated and he should receive a new sentencing hearing. This relief is within the realm of that requested by Shoate in his amended motion. The amended motion requested that the motion court "vacate the judgments and sentences in *State v. Harvey L. Shoate*, case no. 1016-CR03102, and set the case for a jury trial." Therefore, Shoate asked the motion court to do three things, vacate the judgments, vacate the sentences, and set the case for trial. Because the motion court determined that the error

---

**4.** We are perplexed as to why the motion court would indicate that Shoate was not prejudiced by Plea Counsel's alleged error yet determine that Shoate was entitled to relief as a result of ineffective assistance of counsel. As the motion court recognized, before counsel may be deemed ineffective, a movant must demonstrate *both* deficient performance *and* resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

**5.** Though Shoate is correct that neither of those claims were raised under Claim 8(C) in the amended motion, Pro Se Claim #6 (raised as Claim 8(D) in the amended motion) asserted that Shoate's sentence was excessive. And in support of that claim, Shoate testified at the evidentiary hearing that his sentence was excessive because not all terms were run concurrently, as provided by the plea agreement, and he felt that Plea Counsel should have spoken up at sentencing when the plea court indicated that it was running one of the sentences consecutively. In its findings, the mo-

tion court noted that this aspect of Pro Se Claim #6 had been essentially folded into Claim 8(C).

Curiously, neither of the parties nor the motion court seem to recognize that Plea Counsel specifically requested, at sentencing, that the court run the manslaughter conviction consecutive to the assault convictions, notwithstanding the plea agreement that all sentences were to run concurrently. Plea Counsel's statements at sentencing, coupled with his testimony at the evidentiary hearing, suggest that he had a reasonable strategic purpose behind making the request, which would place this act outside the realm of ineffective assistance. "A decision made by counsel based on reasonable trial strategy is virtually unchallengeable; rarely will a strategic decision of counsel be declared so unsound as to constitute ineffective assistance of counsel." *McKay v. State*, 504 S.W.3d 111, 115 (Mo. App. E.D. 2016) (quoting *Tucker v. State*, 468 S.W.3d 468, 473 (Mo. App. E.D. 2015)). But the State—the party aggrieved by these rulings—has not appealed the motion court's decision; thus, we need not address whether the motion court's ruling on this issue was erroneous.

did not affect the validity of Shoate's plea, it determined that he was not entitled to vacate the judgments and obtain a jury trial. Shoate does not challenge these actions by the motion court. And, of course, Shoate does not, and could not, challenge the motion court's grant of his motion to vacate the sentences. Because, in vacating Shoate's sentences, the motion court granted Shoate the relief he sought, he is not aggrieved.

Shoate's argument seems to be rooted in his fear that resentencing could result in a harsher term than he originally received, and his appeal seeks a limitation on the court's discretion at the resentencing hearing.[6] But the fact of the matter is that Shoate is simply not aggrieved by either the receipt of the very relief he requested (vacation of his sentences) or the grant of a new sentencing hearing. Though the potential exists that he might receive a harsher sentence upon resentencing, to assume this fact is to engage in pure speculation. And the mere possibility of a detrimental consequence following the grant of the very judgment he sought does not render Shoate an aggrieved party for purposes of appeal. *See Klagge*, 148 S.W.3d at 859.

## Conclusion

Because Shoate is not aggrieved by the decision he appeals, we lack appellate jurisdiction. This appeal is dismissed.

Thomas H. Newton, Presiding Judge, and James Edward Welsh, Judge, concur.

---

**6.** Again, Shoate did not raise a claim in his point relied on that the motion court erred in failing to limit resentencing; thus, this claim is not properly before us for consideration. Rule 84.04(e); *Howell v. State*, 357 S.W.3d 236, 248 (Mo. App. W.D. 2012).